IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHELLE JOLIVET, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:19-cv-2096-B |
| | § | |
| COMPASS GROUP USA, INC., | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>[1]

Plaintiff Michelle Jolivet has filed a Motion to Compel Discovery, *see* Dkt. No. 27 (the "MTC"), in which she "requests the Court to compel Compass Group USA, Inc. ('Defendant' or 'Compass') to produce all documents in its possession responsive to Plaintiff's First Requests for Production of Documents (RFP Nos. 2-20, 22, 24, 27, 28, and 31) and documents used to refresh Defendant's witness, Ray Pingree's ('Pingree') recollection prior to his deposition testimony" and "further requests the Court to overrule Defendant's objections to Plaintiff's First Set of Interrogatories and Order Defendant to fully respond to each interrogatory (Interrog. Nos. 1-5)," *id.* at 5.

---

[1] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

United States District Judge Jane J. Boyle has referred the MTC to the undersigned United States magistrate judge for a hearing, if necessary, and determination under 28 U.S.C. § 636(b). *See* Dkt. No. 29.

Compass responded to the MTC, *see* Dkt. No. 30, and Jolivet filed a reply, *see* Dkt. No. 36.

## Background

The parties are familiar with the background of this case, so the Court will not repeat it here and will instead focus on the background of disputed discovery requests and responses.

As to the discovery requests at issue, Jolivet explains as follows:

> This case involves claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended, ("Title VII") and the Equal Pay Act, 29 U.S.C. §206(d) ("EPA"), and whether Defendant unlawfully discriminated against Plaintiff.
>
> Throughout her employment with Defendant, Plaintiff was repeatedly passed over for job promotion opportunities in favor of male candidates and Plaintiff was paid less than her male peers. Defendant also unlawfully retaliated against Plaintiff after she complained of sex-based discrimination.
>
> On December 14, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant. *See* (Pl's Charge of Discrimination) at App. 1-3 attached as Exhibit A. Thereafter, on July 29, 2019, the EEOC issued a Notice of Right to Sue. *See* (EEOC Notice of Right to Sue) at App. 4 attached as Exhibit B.
>
> After receiving the Notice of Right to Sue, Plaintiff timely-filed a lawsuit in the Northern District of Texas, on September 4, 2019. *See* Compl., [Doc. 1].
>
> On November 11, 2019, the Court issued a Scheduling Order, [Doc. 16], setting forth deadlines, including the discovery deadline as August 28, 2020.

On November 27, 2019, Plaintiff served a First Set of Combined Discovery Requests on Defendant. *See* (Pl.'s First Set of Combined Discovery Req.) at App. 5-14 attached as Exhibit C.

Then, on January 31, 2020, Defendant served its responses and objections. *See* (Def's Responses and Objs. to Pl's First Set of Interrogs.) at App. 15-19 attached as Exhibit D; *See* (Def's Responses and Objs. to Pl's First Req. for Produc.) at App. 20-30 attached as Exhibit E. However, Defendant failed to 1) identify documents responsive to each interrogatory as required by Fed. R. Civ. P. 33, *see* Ex. D, at App. 15-19 (Def's Resp to Pl's Interrog. Nos. 1-5), and 2) state whether any responsive documents were being withheld subject to an objection(s) as required by Fed. R. Civ. P. 34(b)(2)(C), *see* Ex. E, at App. 20-30 (Def's Resp to Pl's Req. for Produc.). Moreover, Defendant asserted the "attorney-client privilege and/or work product privilege" in response to five (5) requests for production. *See* Ex. E, at App. 22, 24-25, 29 (RFP Nos. 3, 13, 14, 16, and 31).

Notwithstanding Defendant's assertion of the attorney-client privilege and work-product doctrine, Defendant has not produced a privilege log as required by Fed. R. Civ P. 34(b)(2(C).

During discovery, both Plaintiff and the Defendant conducted depositions. As of the time of filing this motion, Plaintiff has deposed three (3) of Defendant's witnesses – Todd Jester (deposed on September 10, 2020), Patrick Boylan (deposed on September 10, 2020), and Ray Pingree (deposed on September 23, 2020). Defendant deposed Plaintiff on September 18, 2020.

After reviewing Defendant's document production and conducting depositions, Plaintiff identified responsive documents missing from Defendant's production.

Seeking to resolve Defendant's deficiencies, Plaintiff requested a discovery conference and the parties conferred over the phone on September 24, 2020. Plaintiff's counsel followed-up the parties' phone conference with a letter, on October 1, 2020, specifically identifying the responsive document missing from Defendant's document production and documents identified during the depositions of Patrick Boylan and Ray Pingree. *See* (Letter Dated October 1, 2020) at App. 31 attached as Exhibit F.

Thereafter, on October 7, 2020, Defendant's counsel responded in writing and the parties conferred over the phone again on October 8, 2020. During this phone call, Defendant agreed to supplement its document production. Plaintiff agreed to narrow the scope of documents requested to the extent that Defendant's supplemental production would resolve deficiencies in Defendant's prior responses. However, the additional 10 pages Defendant produced did not

> encompass all of the missing documents responsive to Plaintiff's
> discovery requests nor did the supplemental production encompass all
> of the missing documents identified during depositions.

Dkt. No. 27 at 5-7 (footnotes omitted). Jolivet explains that she "respectfully requests the Court overrule Defendant's objections and Order Defendant to amend its responses to remove improper objections and specifically identify whether responsive documents are withheld"; that she "has identified specific documents upon review of Defendant's production and depositions of Defendant's witnesses" and "[t]hese documents are responsive to Plaintiff's First Requests for Production, and Plaintiff respectfully further requests the Court Order Defendant to produce all specifically identified documents as they pertain to COMPARABLE MALES and Plaintiff"; and that "[o]One of Defendant's witnesses reviewed documents before his deposition, and Plaintiff also requests that the Court Order Defendant to produce documents reviewed by Mr. Pingree in anticipation of his deposition." *Id.* at 21.

Compass asks the Court to deny the MTC, asserting that,

> [i]n the midst of ongoing discussions regarding discovery, Plaintiff filed
> a Motion to Compel certain discovery, apparently in order to preserve
> her rights to raise any remaining discovery issues before the Court's
> deadline. Plaintiff seeks an order compelling Defendant to amend its
> discovery responses and produce specific documents Plaintiff contends
> are responsive to her discovery requests and a privilege log – items
> Defendant agreed it would produce before Plaintiff filed her Motion.
> [Notably, Plaintiff certified that Defendant's counsel opposed the relief
> sought in the Motion and did not file the written communications with
> Defendant's counsel where Defendant agreed to amend its discovery
> objections, supplement its document production and produce a
> privilege log.] The only remaining dispute is Plaintiff's proposed
> temporal scope for production: 10 years of documents. It is undisputed
> that Plaintiff's claims relate to employment events that occurred in
> 2017, 2018 and 2019. [Defendant continues to assert that some of these

claims are time barred.] While Defendant initially produced records from 2016 through 2020, after a conference with Plaintiff's counsel, Defendant agreed to produce certain documents related to Plaintiff's alleged comparators from 2013 to 2019. Defendant maintains the request for documents for years 2010 through 2019 is overly broad, not relevant to the claims in Plaintiff's lawsuit, nor proportional to the needs of the case.

Dkt. No. 30 at 1-2 (footnotes omitted).

Compass further explains that,

[a]lthough Jolivet baldly alleges that she was discriminated throughout her 10-year employment with Compass, her specific claims arise out of events that occurred in 2017, 2018 and 2019. (Dkt. 1; APP. 109-114). [Plaintiff claims she was denied promotional opportunities throughout her employment but could only identify four positions filled in 2017, 2018 and 2019 that she claims she was wrongfully denied.]

Specifically, she claims she was paid less and disciplined more harshly than her male counterparts and was denied promotional opportunities given to males during this time frame. (Dkt. 1).

Defendant responded to Plaintiff's First Set of Combined Discovery Requests on January 31, 2020. (APP. 001-016). Nearly nine months later, on September 22, 2020, Plaintiff requested a conference to discuss purported discovery deficiencies. (APP. 017). On September 24, 2020, the parties conferred by phone. (APP. 018). At the end of the call, Plaintiff's counsel agreed to identify with more specificity the documents Plaintiff sought by her discovery requests.

By correspondence dated October 1, 2020, Plaintiff's counsel identified the issues raised in her Motion and requested that Defendant respond by October 6, 2020, advising whether it would amend its discovery responses. (APP. 019-028). By letter dated October 6, 2020, Defendant responded to the specific issues raised in Plaintiff's October 1, 2020 letter and advised that it would amend its responses. (APP. 029-031). In this letter, Defendant's counsel noted that Plaintiff's discovery responses contained the very issues about which Plaintiff complained and her answers to interrogatories were not made under oath. (APP. 031). Defendant requested a conference to discuss the issues with Plaintiff's discovery requests. *Id.*

The parties conferred by telephone on October 8, 2020, and during the call Plaintiff agreed to amend her discovery responses. Defendant also discussed during this call the reason it withheld information related to Sean Sellaro, John Liotti, David Schade, Brian

Soderquist and Charles Fargione − none of these males held the same position or had the same responsibilities as Plaintiff at any time between 2017 and 2019. [Defendant maintains that the other three males for whom Defendant provided records are also not appropriate comparators; however, they each, at least, held the same title as Plaintiff during some portion of time between 2017 and 2019. *See Ballard v. Texas Dep't of Hous. & Cmty. Affairs*, 2007 WL 9701259, at *7 (W.D. Tex. Oct. 22, 2007) ("job titles are entitled some weight in the assessment of comparative responsibility...").] In hopes that Plaintiff would agree to limit her requests to the males who held the same position as Plaintiff, Defendant produced the "SAP records" Plaintiff mentions in her Motion. (Dkt. 27, p. 14; APP. 032). These reports provided the positions held, pay grades, organizational assignments and pay rates for these men. (APP. 033-034). Plaintiff did not agree to limit her requests. (APP. 033). [Notably, Plaintiff testified that her claims of unequal pay relate to the pay of just three of the eight men for whom she has sought records – the same three men for whom Defendant initially produced records. (APP. 111-114). Nevertheless, Plaintiff has maintained her demand for 10 years of records related to all eight men, notwithstanding the lack of relevance.]

On October 9, 2020, Plaintiff asked that Defendant advise Plaintiff by the October 13, 2020 deadline to file a motion to compel if it agrees to amend its responses and objections. (APP. 034). Defendant did just that. (APP.040). On October 13, 2020, before Plaintiff filed her Motion to Compel, Defendant advised that it would amend its discovery responses. *Id.*

On October 14, 2020, Defendant amended its discovery responses and produced a privilege log and 182 pages of additional documents. (APP. 048-073). Defendant identified the limits on its search for documents[, [s]ee Advisory Notes on Rule 34 ("An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been 'withheld.'"),] and what documents remained to be produced. Since then, Defendant has produced over 2400 pages of documents, updated its privilege log and has supplemented its written responses twice to identify responsive documents by Bates labels. (APP. 074-104). Accordingly, while a few documents remain to be produced, the only disputed issue is Plaintiff's request for 10-years' worth of documents. [Plaintiff initially requested records encompassing "the ten (10) year time-period preceding the filing of this lawsuit up to and through the time of trial." (APP.026). During a telephone conference, Plaintiff narrowed the requested period to 2010 to 2019. In her Motion, she appears to have changed this request to October 2010 to December

2019.] As demonstrated herein, this request is overbroad, seeks records that are not relevant to Plaintiff's claims and is not proportional to the needs of the case.

Dkt. No. 30 at 2-4 (footnotes omitted).

In reply, Jolivet explains that "Defendant's conduct, during discovery and after the filing of Plaintiff's motion, further supports the need for this Court to compel the documents requested," where,

> [o]n October 15, 2020, during the deposition of Mr. [Dennis] Weinerman, Defendant produced additional documents − approximately 529 pages of documents were produced three (3) hours into the deposition of Mr. Weinerman − which, included 170 pages of duplicates. *See Berge Helene Ltd. v. GE Oil & Gas, Inc.*, 2011 U.S. Dist. LEXIS 19865, at *18 n.23 (S.D. Tex. 2011) ("[d]uplicates of previously produced documents are not 'newly produced' unless the new copies contain unique handwritten or other markings."). Defendant's production during the deposition of Mr. Weinerman also included documents authored and modified by Mr. Weinerman on October 14, 2020 − the day before his deposition. As a result, Plaintiff's counsel requested that Mr Weinerman's deposition be continued to a later time in order to review the document production. The parties agreed and Mr. Weinerman's deposition was rescheduled to October 22, 2020.
>
> Then, on the evening of October 21, 2020, Defendant again produced additionaldocuments, including 45 pages of duplicates and documents pertaining to Plaintiff's interview with Mr. Weinerman. Due to Defendant's production on the evening before Mr. Weinerman' rescheduled deposition, the parties yet again rescheduled his deposition for October 26, 2020.
>
> On October 26, 2020, shortly after the deposition of Mr. Weinerman, Defendant produced additional documents pertaining to Mr. Weinerman and Plaintiff's human resource complaint regarding Mr. Weinerman's inappropriate conduct in the workplace. These documents were in the possession of the Defendant prior to Mr. Weinerman's deposition but were not produced until afterchis deposition. Then, on October 29, 2020, two (2) days after the discovery deadline and three (3) days after the deposition of Mr. Weinerman, Defendant supplemented it production with additionalcdocuments, including a document titled "note" pertaining to plaintiff's human resources complaint against Mr. Weinerman for inappropriate conduct

-7-

> − kissing and hugging plaintiff at a work meeting. Again, these documents were in the possession of the Defendant but were not produced until after Mr. Weinerman's deposition and after the close of the discovery period.
>
> Plaintiff therefore requests that Defendant be compelled to produce relevant and specifically identified documents, as discussed below in Section B. *See, e.g.*, *Source Network Sales & Mktg., LLC v. Jiangsu Mega Motor Co.*, 2017 U.S. Dist. LEXIS 221494, at *6 (N.D. Tex. 2017) (ordering defendant to search for documents any produce by a specified date).

Dkt. No. 36 at 1-2. Jolivet then contends that "Defendant failed to produce documents specifically requested by Plaintiff and identified during depositions of Patrick Boylan, Ray Pingree, and Dennis Weinerman" and explains that "Defendant has not produced five (5) specific types or categories of documents relevant to Plaintiff's claims": (1) "Offer letters and disciplinary records of each comparable male"; (2) "Documents pertaining to Michael Rodgers, an underqualified male candidate, interviewed and selected over Plaintiff for the regional director position in 2019"; (3) "Human resources complaint and investigation pertaining to Mr. Weinerman's inappropriate conduct in the workplace"; (4) unredacted version of "nonprivileged emails and documents − those not listed in Defendant's privilege log"; and (5) "complete 'Flash communication' email chains and interview guide documents." Dkt. No. 36 at 2-6.

Jolivet also filed a Motion for Leave to Supplement Plaintiff's Motion to Compel Discovery, *see* Dkt. No. 38, "Compel, requesting an order to compel the deposition of Ed Ancewicz − Plaintiff's supervisor and the individual that terminated Plaintiff on behalf of Defendant," *id.* at 2. But Jolivet and Compass

thereafter filed a Joint Motion for a Second Amended Scheduling Order, *see* Dkt. No. 42, in which they reported that Jolivet "intends to pursue retaliation and/or discrimination claims associated with Defendant's termination of Plaintiff on October 27, 2020 (the 'Additional Claims'), but to do so Plaintiff seeks to amend her Complaint and complete discovery with respect to the Additional Claims" and that "[t]he Parties agree that Plaintiff should be permitted to file an amended complaint with respect to the Additional Claims and that the Parties should be permitted to complete discovery with respect to the Additional Claims," where "[s]uch an arrangement would permit the Parties to litigate all of Plaintiff's claims together in one proceeding, but to do so, a continuance of the existing trial date and new pre-trial deadlines, including new discovery and dispositive motion deadlines, are necessary," *id.* at 2. And Jolivet and Compass agreed that, "if granted, this Joint Motion renders moot Plaintiff's Motion for Leave to Supplement Motion to Compel Discovery." *Id.* After Judge Boyle granted the request and entered a Second Amended Scheduling Order and Order to Mediate [Dkt. No. 44], the Court terminated as moot Plaintiff's Motion for Leave to Supplement Plaintiff's Motion to Compel Discovery [Dkt. No. 38]. *See* Dkt. No. 45.

## Legal Standards

The Court has previously laid out standards that govern a Federal Rule of Civil Procedure 37(a) motion to compel as to Federal Rule of Civil Procedure 34 requests for production and Federal Rule of Civil Procedure 33 interrogatories, and

those standards are incorporated, but will not be repeated, here. *See Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 573-86 (N.D. Tex. 2018).

**Analysis**

## I.   <u>Moot matters</u>

Although Jolivet's MTC complains that Compass had not served a privilege log, both parties now acknowledge that Compass has done so. And Jolivet raises no challenges to Compass's withholding any responsive documents as privileged or attorney work product. The Court DENIES the MTC insofar as it might have sought to require Compass to serve a privilege log.

Jolivet's reply also narrows the matters still at issue in light of Compass's further document productions and amended discovery responses. The Court therefore DENIES the MTC as moot except as to the specific matters addressed below.

## II.   <u>Time period for production</u>

Compass explains in responding to the MTC that,

> [w]hile Plaintiff alleges that she was discriminated against throughout her employment, she can cite to no specific adverse employment actions that occurred prior to January 2017. In fact, Plaintiff did not work with many of her alleged comparators at any time before 2017 and some of the alleged comparators worked for different sectors of Compass during this time frame.
>
> Notwithstanding her self-serving claim that the continuing violations doctrine applies, courts have routinely rejected that argument when faced with claims similar to Plaintiff's. *See Montgomery v. Clayton Homes Inc.*, 2003 WL 1922917, at *1, 65 F. App'x 508 (5th Cir. 2003) (court correctly rejected continuing violation doctrine to unequal pay claims under Title VII and EPA); *O'Donnell v. Vencor, Inc.*, 466 F.3d 1104, 1113 (9th Cir. 2006) ("Each discriminatory

-10-

paycheck [plaintiff] received constitutes a separate violation of the EPA ... [t]herefore ... the continuing violation doctrine does not [apply]. *Goring v. Bd. of Sup'rs of Louisiana State Univ. Agr. & Mech. Coll.*, 414 F. App'x 630, 632 (5th Cir. 2011) (argument that continuing violation applied to failure-to-promote claim was "futile[]"). Instead, Title VII's 300-day limitation and the EPA's two- or three-year limitation applies. *Montgomery*, 2003 WL 1922917, at *1; *Goring*, 414 F. App'x at 632-33.

"[C]ourts have held that two to five years is an appropriate limitation for information regarding other employees in employment discrimination cases." *Dreschel v. Liberty Mut. Ins. Co.*, 2015 WL 6865965, at *3 (N.D. Tex. Nov. 9, 2015). *See Beasley v. First Am. Real Estate Info. Servs., Inc.*, 2005 WL 1017818, at *1 (N.D. Tex. Apr. 27, 2005) (requiring production of documents covering two-year period); *McCall v. Sw. Airlines Co.*, 2010 WL 1848484, at *2 (N.D. Tex. May 7, 2010) (requiring production of documents covering five-year period). Here, where Plaintiff's alleged comparators did not work on the same accounts as Plaintiff, did not report to the same supervisor or did not hold the same positions as Plaintiff or have the same job responsibilities during Plaintiff's requested time frame, there is no relevant information to be gleaned from these employees' records. However, in an effort to avoid the time and expense of responding to a motion to compel, prior to Plaintiff's filing this Motion, Defendant agreed to a six-year period with regard to payroll records, positions held, organizational assignments, annual performance evaluations, job descriptions, disciplinary records, resumes, and employment agreements of the alleged male comparators. (APP. 030). [Defendant produced information related to the alleged comparators' pay, organization assignments and paygrades for 2013-2020, as these were produced before Plaintiff narrowed the limit of her request to 2019.]

Plaintiff's blanket demand for a ten-year temporal scope for all of her requests does not take into consideration each specific request and the relevance of the records sought. For example, performance assessments of alleged comparators by supervisors other than those who were responsible for the alleged adverse employment actions about which Plaintiff complains are not relevant to this lawsuit. (*See* Dkt. 27 at 14). Likewise, whether an alleged comparator was written up ten years ago by a supervisor who did not supervise Plaintiff has no real nexus to Plaintiff's claim that her supervisors in 2017, 2018 and 2019 discriminated against her. (*See* Plaintiff's Appendix, Dkt. 28 at APP. 25, Request for Production Nos. 15). For these reasons, Defendant requests that the Court deny Plaintiff's request for a 10-year limitation on her document requests.

Dkt. No. 30 at 5-6.

Jolivet replies that her "specified time period is tailored to discover relevant information to establish Plaintiff's Title VII and the Equal Pay Act claims," where

> Plaintiff seeks male employees' offer letters and disciplinary records from the six (6) year period before the statutory liability period and one (1) year after the statutory liability period to reveal each males' employment history with the company – the males' pay, positions, seniority in the company, experience, and skill-level. The males' employment history is relevant to reveal whether male employees were promoted and paid differently than Plaintiff. [Unlike the Equal Pay Act, Title VII does not require that Plaintiff's job be "substantially equal" to the higher-paid male employee for purposes of comparison. *See Fields v. Stephen F. Austin State Univ.*, 2014 U.S. Dist. LEXIS 185689, at *9-11 (E.D. Tex. 2014) (discussing standards for comparators under the Equal Pay Act and Title VII). Here, the documents requested will show whether potential comparators had the same job dutiesas Plaintiff even where the job titles were different.] Therefore, Plaintiff's requested time period for comparable males' offer letters and discipline records are relevant to reveal that Defendant's proffered reasons for selecting male candidates over Plaintiff were pretextual. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-05, 93 S. Ct. 1817 (1973) ("Other evidence that may be relevant to any showing of pretext includes ... petitioner's general policy and practice with respect to minority employment."); *Bell v. EPA*, 232 F.3d 546, 553 (7th Cir. 2000) ("evidence of systemic disparate treatment is relevant to and probative of the issue of pretext even when it is insufficient to support a pattern and practice disparate treatment case.").
>
> Plaintiff also seeks information relating to Defendant's conduct one (1) year after the statutory liability period to demonstrate Defendant's retaliatory intent toward Plaintiff. After the filing of Plaintiff's EEOC Charge of Discrimination, Defendant allegedly eliminated Plaintiff's job position. Then, Plaintiff interviewed in front of a three-person panel – Mr. Weinerman, Mr. Pingree, and a representative from Human Resources – for two different Regional Director positions. Plaintiff was rejected for both positions and both positions were filled by male candidates – Mr. Boylan and Mr. Rodgers. Discovery of information pertaining to the Regional Director job interviews will reveal the basis of rejecting Plaintiff for the Regional

-12-

Director job positions. Plaintiff also seeks information pertaining to the human resources complaint against Mr. Weinerman for inappropriately greeting Plaintiff at a work meeting. As discussed above, the complaint is relevant to determine whether Mr. Weinerman retaliated against Plaintiff.

Furthermore, on October 27, 2020 − the same day as the discovery deadline in this lawsuit − Plaintiff was terminated from her employment. Defendant terminated Plaintiff three (3) days before her annual performance review was due and did not provide Plaintiff with advance notification of termination. Upon information and belief, Defendant replaced Plaintiff with a male candidate. Therefore, information pertaining to Plaintiff's termination − after the statutory liability period − is relevant to reveal whether Defendant retaliated against Plaintiff by terminating her due to her participation in this lawsuit.

Moreover, male employees now fill all three (3) positions Plaintiff applied for or held after the statutory liability period. The information pertaining to male candidates selected for the Regional Director positions in 2019 and male candidate that replaced Plaintiff in 2020 is relevant to Defendant's discriminatory intent toward Plaintiff. Where Plaintiff must offer "substantial evidence of pretext" to meet her burden, the males' interview performance and qualifications are relevant to demonstrate that Defendant's proffered reasons for selecting male candidates for promotions and paying Plaintiff less than males is pretextual. *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402-03 (5th Cir. 2001); *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991) ("A plaintiff who must shoulder the burden of proving that the reasons given for her denial of promotions are pretextual should not normally be denied the information necessary to establish that claim.") (citing *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300 (5th Cir. 1973)).

....

Defendant argues the continuing violation doctrine does not apply to Plaintiff's claims, and that "Title VII's 300-day limitation and the EPA's two or three-year limitation applies." *See* Def.'s Resp., [Doc. 30 at p. 5]. However, the statutory liability period is not a per se limitation on the scope of discovery in Title VII lawsuits. Courts routinely find that "[d]iscovery of information both before and after the liability period may be relevant, and courts commonly extend the scope of discovery to a reasonable number of years both prior to and following [the statutory liability] period." *Drechsel v. Liberty Mut. Ins. Co.*, 2015 U.S. Dist. LEXIS 151409, at *7 (N.D. Tex. 2015) (citing *Beasley*, 2005 U.S. Dist. LEXIS 34030, at *1, *3 (N.D. Tex. Apr. 27,

2005) (noting that "discovery of information both before and after the liability period within a Title VII lawsuit may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence and courts commonly extend the scope of discovery to a reasonable number of years both prior to and following such period.")(citation omitted).

Moreover, courts maintain discretion to compel discovery covering different time periods based upon the discovery's relevance to each parties' claims and defenses. *Drechsel*, 2015 U.S. Dist. LEXIS 151409, at *7 (N.D. Tex. 2015); *Beasley*, 2005 U.S. Dist. LEXIS 34030, at *3-4 (N.D. Tex. 2005) (ordering production of documents for two-year period after plaintiff's termination as requested by plaintiff); *McCall v. Sw. Airlines Co.*, 2010 U.S. Dist. LEXIS 44782, at *4 (N.D. Tex. 2010) (ordering production for two (2) years prior to the liability period). Here, Defendant's first discriminatory actions took place in 2010 such as − hiring male candidates instead of female candidates, determining starting pay, interviewing and promoting male candidates over Plaintiff, and increasing male employees' pay. Therefore, Plaintiff's request for discovery to include the six (6) year period before the statutory liability period is relevant to Plaintiff's claims.

Moreover, Defendant continued to discriminate and retaliate against Plaintiff after filing this lawsuit....

Defendant's proposed discovery period − the statutory liability period − would exclude Defendant's other conduct that causally connects Defendant's adverse employment decisions to Plaintiff's participation in protected activity. Therefore, Plaintiff's request for discovery to include at least one (1) year after the statutory liability period is relevant to Plaintiff's claims of retaliation.

Dkt. No. 36 at 6-10 (footnotes omitted).

Compass explains that it, "in an effort to avoid the time and expense of responding to a motion to compel, prior to Plaintiff's filing this [MTC], ... agreed to a six-year period with regard to payroll records, positions held, organizational assignments, annual performance evaluations, job descriptions, disciplinary records, resumes, and employment agreements of the alleged male comparators." Jolivet presses her request for "male employees' offer letters and disciplinary

records from the six (6) year period before the statutory liability period and one (1) year after the statutory liability period" but does not convincingly explain why this extended period, as opposed to Compass's offered period, is necessary "to reveal each males' employment history with the company – the males' pay, positions, seniority in the company, experience, and skill-level." And the Court is persuaded by Compass's arguments in support of the pre-filing time period that it is advocating.

The Court grants the MTC in part and finds that, under the circumstances, Compass should only be required to produce the requested documents for the time period 2013 through – for the reasons that Jolivet persuasively explains, particularly in light of the forthcoming amended complaint – 2020.

## III.   <u>Offer letters and disciplinary records of each comparable male</u>

In her reply, Jolivet explains that Compass

only produced the following offer letters: Plaintiff's offer letter for 2015 and 2017; Patrick Boylan's offer letter for 2015, 2016 and 2019; Michael Rodgers's offer letter for 2019; and David Schade's offer letter for 2017. And, Defendant has not produced any offer letters for other comparable males – Marc Wincott, David Schade, Brian Soderquist, John Liotti, Jose Munoz, Charles Farigone, and Sean Sellaro.

Defendant argues that the employee records of comparable males are irrelevant because these males did not or do not hold the same job positions as the Plaintiff. *See* Def.'s Resp., [Doc. 30 at p. 6]. However, a central theme in this lawsuit is Defendant's discriminatory practice of hiring and promoting males over female employees. Here, the offer letters of comparable males are relevant to show the frequency in which males were promoted and paid a higher rate than female employees. The offer letters identify the date of the job offer, job position, salary, pay grade, date of hire or promotion, location of the job position being offered, the place of residence of the candidate being offered the job position, supervisor's name, eligibility for bonus pay,

-15-

and work experience. The offer letters are also relevant and demonstrate the differences in pay, requirements, job responsibilities, experience, and work performance between Plaintiff and male employees; and the job qualifications of each comparable male and the Plaintiff. [Here, Plaintiff seeks the offer letters of eight (8) potential comparable males over a six (6) year period before the filing of this lawsuit and one (1) year after the filing of the lawsuit, if each male obtained three (3) promotions, Defendant would be required to produce only 240 documents. Plaintiff's narrowed request strikes a balance between "the potential relevance of [the male employees' records] against the burden to the employer. *Beasley v. First Am. Real Estate Info. Servs.*, 2005 U.S. Dist. LEXIS 34030, at *3-4 (N.D. Tex. 2005).]

The disciplinary records pertaining to male employees are relevant to show that Defendant did not consistently apply its policies procedures between male employees and female employees. Prior disciplinary records will also demonstrate that Defendant's discriminatory actions – denying Plaintiff promotions and paying her at a rate less than male peers – are pretextual. *See* Def.'s Resp., [Doc. 30 at p.6]. Therefore, Defendant should be compelled to produce disciplinary records for Plaintiff's requested time period – the six (6) year period before the statutory liability period and one (1) year after the statutory liability period.

Dkt. No. 36 at 2-3 (footnote omitted).

The parties can finally resolve the merits of whether the male employees at issue are, for purposes of Jolivet's claims, true comparators on dispositive motions before Judge Boyle or at trial. For purposes of discovery, Jolivet has shown that the information that she seeks is relevant to her claims, as she seeks to press them, and proportional to the needs of the case.

The Court grants the MTC in part as to these materials and ORDERS Compass to, by **February 1, 2021** and in compliance with Federal Rule of Civil Procedure 34(b)'s requirements, produce all disciplinary records and offer letters for 2013-2020, if in Compass's possession, custody, or control and not already produced,

-16-

for Patrick Boylan, Michael Rodgers, David Schade, Marc Wincott, Brian Soderquist, John Liotti, Jose Munoz, Charles Farigone, and Sean Sellaro.

## IV.   **Documents pertaining to Michael Rodgers**

In her reply, Jolivet explains that she still seeks "[d]ocuments pertaining to Michael Rodgers, an underqualified male candidate, interviewed and selected over Plaintiff for the regional director position in 2019," where,

> [o]n September 23, 2020, during Ray Pingree's deposition, Mr. Pingree identified the male candidate − Michael Rodgers − who interviewed and was selected for the same regional director position Plaintiff interviewed and was rejected for in 2019. Other than a one (1) page offer letter, Defendant produced no other documents pertaining to Mr. Rodgers, a male candidate interviewed and selected over Plaintiff, a female candidate, for the same job position. [Yet, Defendant has produced documents pertaining to other male candidates − who interviewed and were not hired for the regional director position in 2019]
>
> Specifically, Defendant has not produced the communication (i.e. email) in which Mr. Rodger's offer letter was sent or communicated; and Mr. Rodger's resume, profile test and scores, interview panel and questions, or interview scores. Here, Mr. Rodger's resume, profile test, interview panel, and interview questions are relevant to demonstrate whether Plaintiff and Mr. Rodgers were similarly qualified and whether Plaintiff was treated less favorably than male candidates. Mr. Rodger's profile test scores and interview scores are also relevant to demonstrate that Defendant's proffered reasons for selecting Mr. Rodgers over Plaintiff are a pretext for discrimination. Therefore, Defendant should be compelled to produce relevant documents pertaining to Mr. Rodgers, such as the communications (i.e. email) communicating the job offer to Mr. Rodgers and Mr. Rodgers' resume, profile test and scores, interview panel and questions and interview scores used for the 2019 regional director position.

Dkt. No. 36 at 3 (footnote omitted).

The Court is persuaded that the communication (i.e. email) in which Mr. Rodger's offer letter was sent or communicated and Mr. Rodger's resume, profile

test and scores, interview panel and questions, or interview scores are relevant to the claims or defenses in this case and that their discovery is proportional to the needs of the case for the reasons that Jolivet explains.

The Court grants the MTC as to these materials and orders Compass to, by February **1, 2021**, produce all previously unproduced documents in these categories in Compass's possession, custody, or control in compliance with Federal Rule of Civil Procedure 34(b)'s requirements.

## V.   Human resources complaint & investigation as to Dennis Weinerman

In her reply, Jolivet explains that she still seeks "[h]uman resources complaint and investigation pertaining to Mr. Weinerman's inappropriate conduct in the workplace," where,

> [o]n September 18, 2020, during Plaintiff's deposition, Plaintiff testified that she filed a complaint with human resources for unwanted touching resulting from Mr. Weinerman greeting Plaintiff with a "bear" hug and a kiss at a work meeting. However, the only document Defendant produced was on October 29, 2020 (after the close of discovery and Mr. Weinerman's deposition), consisting of a two-page document indicating it is a "note to file." The two-page "note to file" is titled "Conversation with Michelle B. [Plaintiff]" and is dated "October 2018."
>
> Furthermore, on October 26, 2020, Mr. Weinerman testified that Plaintiff's human resources complaint against him was still pending when he interviewed Plaintiff for the Regional Director position in 2019. Therefore, the human resources complaint, including all documents relating to communications and the investigation of Mr. Weinerman's inappropriate conduct toward Plaintiff are highly relevant to Plaintiff's claims of retaliation. These documents and communications also show that Defendant inconsistently applied its policies and its investigation of Mr. Weinerman was conducted with irregularities. Therefore, Defendant should be compelled to produce documents and correspondence pertaining to Plaintiff's human resources complaint against Mr. Weinerman.

Dkt. No. 36 at 3-4.

The Court is persuaded that documents and correspondence pertaining to Plaintiff's human resources complaint against Mr. Weinerman are relevant to the claims or defenses in this case and that their discovery is proportional to the needs of the case for the reasons that Jolivet explains.

The Court grants the MTC as to these materials and orders Compass to, by February **1, 2021**, produce all previously unproduced documents in these categories in Compass's possession, custody, or control in compliance with Federal Rule of Civil Procedure 34(b)'s requirements.

## VI.   **Redacted or incomplete documents**

In her reply, Jolivet explains that

Defendant's document production contains partial redactions of relevant information. For example, Mr. Boylan testified that an applicant's place of residence is considered in Defendant's hiring and promotion decisions. Therefore, the male applicants' place of residence is relevant to whether male candidates met the purported criteria for the job. Yet, the address and place of residence is redacted in the offer letters produced by Defendant. Therefore, Defendant should be compelled to remove redactions from nonprivileged emails and documents − those not listed in Defendant's privilege log. *See Ge v. Mitsubishi Heavy Indus.*, 2011 U.S. Dist. LEXIS 172997, at \*13-15 (N.D. Tex. 2011) ("The unilateral redaction of parts of a produced document is inconsistent with discovery rules and privileges."); *Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250, at \*299 (N.D. Tex. 2017).
   Defendant also produced incomplete documents. For example, on October 15, 2020, Defendant produced a "Flash Communication" email bates numbered (COMPASS_00206) identifying the sender as Rick Post, multiple recipients including Plaintiff and her supervisors, the subject line as "Flash Communication–Complex-20479 Verizon West Valley," and the date as May 12, 2018 at 7:22 AM. Other than

-19-

Plaintiff's response on May 14, 2020 at 10:42 AM, the rest of the email chain and response(s) are omitted. Then, on October 16, 2020, Defendant produced "interview guide" documents pertaining to the 2017 Regional Director interview; however, the "score" and "notes" columns are blank.

Defendant should be compelled to produce complete "Flash communication" email chains and interview guide documents. *See, e.g., Chilly Dil Consulting, Inc. v. JetPay ISO Servs., LLC*, 2015 U.S. Dist. LEXIS 192512, at *10-11 (N.D. Tex. 2015) ("a responding party is required to produce all requested relevant, non-privileged documents or things in its 'possession, custody, or control.'") (quoting Fed. R. Civ. P. 34(a)(1)) (emphasis added); *see also* Fed. R. Civ. P. 37(a)(4) ("an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond").

Dkt. No. 36 at 5-6 (footnote omitted).

As the Court has previously explained, a responding party "cannot redact nonprivileged information from any responsive document because the information is not itself [responsive]." *Samsung Elec. Am., Inc. v. Chung*, 321 F.R.D. 250, 299 (N.D. Tex. 2017).

The Court grants in part the MTC and ORDERS that Compass must, by **February 1, 2021**, produce unredacted versions of any previously produced, nonprivileged emails and documents – that is, those not listed in Defendant's privilege log – as well as complete versions of previously produced "Flash communication" email chains and interview guide documents.

## VII.   <u>Award of expenses</u>

Under Federal Rule of Civil Procedure 37(a)(5)(C), the Court determines that, considering all of the circumstances here and the Court's rulings above, the parties

will bear their own expenses, including attorneys' fees, in connection with Jolivet's MTC.

## Conclusion

For the reasons and to the extent explained above, the Court GRANTS in part and DENIES in part Plaintiff Michelle Jolivet's Motion to Compel Discovery [Dkt. No. 27].

SO ORDERED.

DATED: January 11, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE