IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHELLE JOLIVET, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:19-cv-2096-B |
| | § | |
| COMPASS GROUP USA, INC., | § | |
| | § | |
| Defendant. | § | **FILED UNDER SEAL** |

**MEMORANDUM OPINION AND ORDER**[1]

**Background**

Plaintiff Michelle Jolivet has filed a Motion to Compel and Request for In Camera Review of Documents on Privilege Log, *see* Dkt. No. 77 (the "MTC"), in which she seeks "in camera review of 'COMPASS_004999_CONFIDENTIAL' ('clawback document') and other specific entries in Defendant's Fourth Amended Privilege Log produced on August 12, 2021," *id.* at 1.

More specifically,

- Jolivet asserts that Defendant Compass Group USA, Inc. "has improperly invoked the clawback provisions of [Federal Rule of Civil Procedure 26(b)(5)] by claiming attorney-client privilege with respect to COMPASS_004999 – a document which in fact contains

---

[1] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

**EXHIBIT A**

nonprivileged statements establishing Defendant's retaliatory motive in terminating Plaintiff";

- Jolivet "respectfully requests in camera review of the clawback document and an order overruling Defendant's claim of privilege";

- Jolivet further asserts that "Defendant's attempt to conceal retaliatory statements – direct evidence supporting Plaintiff's claims – via an improper assertion of attorney-client privilege calls into question Defendant's other assertions of privilege" – that is, that "Defendant's improper 'clawback' of a document containing nonprivileged, direct evidence of its retaliatory actions against Plaintiff undermines the reliability of Defendant's other assertions of the attorney-client privilege – whether Defendant's other claims of privilege also improperly withhold evidence supporting Plaintiff's claims";

- Jolivet "requests in camera review of specific documents listed in Defendant's Fourth Amended Privilege Log to determine the applicability of Defendant's claims of privilege"; and,

- asserting that "Defendant's insufficient, generalized document descriptions cannot establish its other assertions of privilege," Jolivet "requests Defendant be ordered to amend its privilege log to precisely describe the reasons for asserting each claim of privilege."

*Id.* at 1-2, 11 (footnote omitted); *see also id.* at 21.

United States District Judge Jane J. Boyle has referred the MTC to the undersigned United States magistrate judge for a hearing, if necessary, and determination under 28 U.S.C. § 636(b). *See* Dkt. No. 79; Dkt. No. 88 at 1.

The Court then ordered that "[a] response to [77] Plaintiffs Motion to Compel and Request for In Camera Review of Documents on Privilege Log must be filed by Thursday, September 2, 2021 and should be supported by detailed affidavits and other evidence to the extent possible to support the claims of privilege or work product protection over the contested documents." Dkt. No. 80.

**EXHIBIT A**

Before Defendant filed its response as directed, Jolivet filed a Supplemental Motion to Compel and Request for In Camera Review of Documents on Privilege Log, *see* Dkt. No. 86, in which she explains that, after the Court ordered Defendant to respond to the MTC, Defendant "produce[d] a document 'originally withheld from production in its entirety based on attorney-client privilege'" but "with the A/C communication portions redacted," *id.* at 1. Jolivet asserts that "Defendant's latest claim that because it has produced the requested documents that in camera review is no longer necessary only further raises the specter of doubt regarding all its assertions of privilege," where "[o]nly after forcing Plaintiff to file a motion to compel and being ordered to file affidavits in support of their privilege did Defendant decide to provide an unredacted document," and that "Defendant has demonstrated a consistent pattern of withholding documents under an improper privilege claim solely to prevent Plaintiff's access to evidence supporting her claims." *Id.* at 4, 6-7. Jolivet explains that she therefore "files this supplemental motion requesting the Court to conduct an in camera review of all documents identified on Defendant's Privilege Log." *Id.* at 7.

In the response that Defendant then filed, Defendant argues that Jolivet

> asks the Court to (i) cherry-pick lines from an email string discussing potential settlement offers for the then-upcoming mediation of this matter (mistakenly produced and promptly clawed-back pursuant to Federal Rule of Civil Procedure 26(b)(5)), (ii) ignore all communications within that string are exclusively between Defendant's in-house counsel and other employees, and (iii) issue a ruling that such communications are not privileged. The reasoning given in Plaintiff's Motion is, essentially, that Plaintiff could also

**EXHIBIT A**

cherry-pick lines from the string and present them out of context as evidence in support of her discrimination and retaliation claims. That such evidence, so presented, could potentially be "really good for Plaintiff's case" is not a basis for the Court to rule that these attorney-client communications are not privileged.

Plaintiff also requests an in camera review of attorney-client communications, again between Defendant's in-house counsel and other employees, regarding and attaching attorney work product. Plaintiff asserts no basis for this Court's in camera review of such privileged document, nor does she provide any basis for her stated belief that such communication and/or attached document is not privileged.

In the Motion, Plaintiff sought an order requiring Defendant to amend its privilege log to even more specifically explain the contents of privileged documents withheld. In her Supplement, Plaintiff now requests the Court conduct an in camera inspection of every single document listed on Defendant's 40-page privilege log, based on Defendant's good-faith production of (i) a document (Supplement App. [Doc. #87] at 004-05) that had previously been redacted on relevance grounds (no assertion of privilege, and never included on any version of Defendant's privilege log), and (ii) an email communication withheld for privilege but subsequently produced with the sub-portions of the correspondence directed to in-house counsel redacted.

Dkt. No. 89 at 1-2.

Defendant explains

- that it "has produced a privilege log, amended on four occasions, setting forth the author(s), recipient(s), date, and description of each responsive document withheld from Defendant's production, as well as the privilege(s) being asserted as the basis for such withholding";

- that, "[o]n virtually every line item, Jeff Henry, Lisa A. Miller, Lisa Sherman ('Sherman') (all in-house counsel for Defendant), Cara DeFrancesco (in-house paralegal for Defendant), and/or the undersigned counsel are listed as an author or recipient," with "a few exceptions"; and

- that Jolivet's MTC "requested the in camera review of communications between Sherman and Defendant's non-legal employees identified on seven entries on Defendant's Fourth Amended Privilege Log: (i) four

-4-

**EXHIBIT A**

> entries for communications 'regarding payment to Plaintiff,' (ii) email communications 'regarding Plaintiff's employment, mediation, and potential settlement,' (iii) correspondence from in-house counsel regarding a meeting invitation for a call regarding the instant action (the 'Clawback Document'), and (iv) correspondence discussing scheduling a call regarding the instant action and attaching attorney work product."

*Id.* at 3.

Defendant asserts that all of these seven documents are privileged but explains that one document that Jolivet requests that the Court review in camera, which "had been initially produced by Defendant with redactions but which was not included on Defendant's privilege log," "was never included on Defendant's privilege log, and Defendant did not redact any information from such document on the basis of privilege; rather, it was initially redacted for relevance and unintentionally excluded from Defendant's February 1, 2021 supplemental production." *Id.* at 5-6; *see also id.* at 8-13. As to this document, Defendant further explains that Jolivet

> requests in her [MTC] the in camera review of another document that had been initially produced by Defendant with redactions but which was not included on Defendant's privilege log. Prior to filing the Motion, Plaintiff's counsel did not confer with Defendant's counsel regarding this document, as required by the Court's Rules. Once the document was brought to Defendant's attention and upon further review, it was determined that this document – a list of open job requisitions and the names of internal and external applicants who had applied to those available positions – was originally produced on October 23, 2020 with information related to jobs to which Plaintiff had not applied redacted. By its Order dated January 1, 2021, the Court ordered Defendant to produce "unredacted versions of any previously produced, nonprivileged emails and documents – that is, those not listed in Defendant's privilege log…" Order [Doc. #46] at p. 20. In connection therewith, on February 1, 2021, Defendant produced 96 pages of previously redacted documents with all redactions removed

-5-

**EXHIBIT A**

(other than those protecting an individual's Social Security number). Defendant, believing it had complied with the Court's Order, thereafter invited Plaintiff's counsel on multiple occasions to identify any non-privileged documents that had still not been produced without redactions. *See* APP 008-009; *see also* APP 010-013. However, Plaintiff's counsel never identified any such document prior to filing the instant Motion. Defendant, having now been alerted that one nonprivileged, redacted document had been inadvertently omitted from its February 1, 2021 supplement, promptly produced the document in unredacted form. See Supplement App. at Ex. 4 (App. 007-09).

*Id.* at 4-6. As to this document, Defendant contends that it "has since produced that entire document with no redactions, thus mooting any need for an in camera review thereof." *Id.* at 8.

As to the Clawback Document, Defendant explains that

[t]he email communications between in-house counsel, Cerrati, and Vessillo "regarding Plaintiff's employment, mediation, and potential settlement" were listed on Defendant's Third Amended Privilege Log, produced to [Jolivet] on June 8, 2021. *See* APP 004-006. Not only were these communications included on that log, but that same combination of authors, recipients, and description was listed six separate times. *See id.* The Clawback Document is one version of that same string of protected emails, which are all from and to in-house counsel regarding the then-upcoming mediation of the instant action and potential settlement offers to be made by Defendant at such mediation. *See generally* Motion App. at Ex. 7 (App. 100-05). The Clawback Document was inadvertently produced to [Jolivet] amidst Defendant's production of 752 native email files. Realizing the error, Defendant promptly notified Plaintiff's counsel of the inadvertent production and invoked the clawback provision of Federal Rule 26(b)(5) on July 30, 2021. Defendant thereafter produced a Fourth Amended Privilege log on August 12, 2021, which added, inter alia, the Clawback Document referenced by Bates number (in addition to the six other privilege log entries for communications within this same chain of emails). *See* Motion App. At Ex. 1 (App. 001-41).
....
Despite being alerted by Defendant's Third Amended Privilegeog on June 8, 2021, that the Clawback Document and related

EXHIBIT A

communications in the same string of emails were being withheld based on the attorney-client privilege, [Jolivet] did not make any objections or motions with respect to such documents until August 19, 2021, nearly three weeks after Defendant's inadvertent production and prompt recall of the Clawback Document on July 30, 2021, and mere days before her response to Defendant's Motion for Summary Judgment was due. [Jolivet] now claims that Defendant should not be permitted to assert attorney-client privilege because the communications "contain[] direct evidence of Defendant's retaliatory motive in terminating Plaintiff," and that such communications are not privileged because they supposedly discuss business issues, rather than seek assistance in a legal proceeding. *See* Motion at pp. 2, 6. However, the attorney-client privilege is unmistakably applicable here, and [Jolivet] has not established any exception thereto.

....

[Jolivet] takes only selected sentences from the chain, mischaracterizes them, and claims that they show "direct evidence" of Defendant's supposed retaliatory motive which Plaintiff would need in order to resist Defendant's Motion for Summary Judgment, and claims Defendant should be barred from asserting privilege "as both a sword and a shield." *See* Motion at pp. 2-5; cf. Motion at pp. 6-7 (claiming ████████████████████████████████████████████████████████ ) with Motion App. at Ex. 7 (App. 103-104) ( ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ). Here, Defendant has never sought to use its privileged internal settlement communications as a "sword" in any claims against [Jolivet] or any affirmative defense Defendant has asserted in this matter. It is sine qua non that privileged documents are evidence that an opposing party could potentially otherwise use in support of its claims or defenses: if a privileged document was not both relevant and responsive to the opposing party's discovery requests, the document would not be included on the producing party's privilege log. However, none of the case law cited by Plaintiff on this issue supports her position that a requesting party is entitled to the production of another party's privileged communications because they are or may be relevant to the claims asserted by the requesting party.

....

**EXHIBIT A**

*Id.* at 4-5, 9-11 (cleaned up). Defendant also argues that, although Jolivet "contends that the correspondence at issue was initiated by in-house counsel for a business purpose," Jolivet "omits what precedes the cherry-picked comment" and "[t]hat these communications between Defendant's employees and in-house counsel involved discussions of potential settlement offer terms … does not change the nature of the conversation," which "is not regarding business or technical advice or management decisions, but rather consists of communications made for the purpose of giving or obtaining legal advice or services." *Id.* at 11-12 (cleaned up).

Defendant also asserts that an in camera review of every withheld document is "is inappropriate without the Court first determining the sufficiency of the log descriptions themselves" and that "Defendant's privilege log identifies, for each entry, the information required under [Federal Rule of Civil Procedure] 26(b)(5) by 'describ[ing] the nature of the documents, communications, or tangible things not produced or disclosed – and do[ing] so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.'" *Id.* at 13-14 (quoting FED. R. CIV. P. 26(b)(5)). According to Defendant, "[t]he descriptions in Defendant's privilege log are sufficient under the Federal Rules to establish the withheld communications are privileged, and Plaintiff has adduced no competent evidence that any or all documents included on such log are not protected." *Id.* at 14.

Jolivet replies that

-8-

**EXHIBIT A**

- "Defendant failed to provide detailed affidavits and other evidence as ordered by the Court [Doc. 80] to support Defendant's privilege assertions";

- "since Defendant failed to provide the Court with detailed affidavits or any other evidence to support its claims of privilege, [Jolivet] respectfully requests that Defendant be ordered to produce the contested documents to the Court for in camera review";

- "Defendant's confession that it improperly withheld documents on the basis of privilege only further supports the necessity of an in camera review over all documents listed in Defendant's privilege log";

- "the documents submitted in support of Plaintiff's Motion to Compel [Doc. 77] are provided as evidence demonstrating Defendant's egregious discovery conduct warranting in camera review of all documents listed in Defendant's privilege log";

- "Defendant's latest productions – which Defendant only produced after [Jolivet] filed her motion to compel and after being ordered to file affidavits in support of its claims of privilege – only further demonstrate the necessity of an in camera review with respect to all documents listed in Defendant's privilege log";

- while, "[i]nstead of providing evidence to support its claims of privilege and work product, Defendant accuses [Jolivet] of 'speculating' that Defendant has improperly withheld further documents," Jolivet "has provided at least five (5) concrete examples of instances where Defendant confessed that it improperly withheld documents as allegedly privileged when in fact the documents were not privileged";

- "Defendant similarly fails to offer additional evidence supporting its claims of privilege for the other documents in its privilege log—rather, Defendant simply attaches 'excerpts from Defendant's Third Amended Privilege Log' and two (2) letters from Defendant's counsel regarding discovery disputes throughout duration of this lawsuit

- "the evidence offered by Plaintiff – Defendant's continued pattern of improper privilege assertions – demonstrates the necessity of an in camera to ascertain the propriety of Defendant's other claims of privilege"; and

**EXHIBIT A**

- "[s]tatements in the Clawback Document speak for themselves" and "when read independently do not lose their original meaning," such that "other statements in the Clawback Document … are not needed to understand the meaning of the statements demonstrating evidence of retaliation."

Dkt. No. 95 at 1-10.

### Legal Standards

The Court has previously laid out standards that govern a Federal Rule of Civil Procedure 37(a) motion to compel as to Federal Rule of Civil Procedure 34 requests for production, and those standards are incorporated, but will not be repeated, here. *See Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 573-86 (N.D. Tex. 2018).

The scope of discovery in civil cases under Federal Rule of Civil Procedure 26(b)(1) "does not include privileged information" or, absent the showing that Federal Rule of Civil Procedure 26(b)(3) mandates, work product protected information. *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 264 (D. Md. 2008).

As a threshold matter, the issue of whether documents are exempt from discovery under the attorney work product doctrine is governed by federal law. *See Zenith Ins. Co. v. Texas Institute for Surgery, L.L.P.*, 328 F.R.D. 153, 162 (N.D. Tex. 2018). Defendant, as the responding party seeking to withhold responsive documents or materials, has the burden of demonstrating that the work product doctrine applies, and

-10-

**EXHIBIT A**

the issue of whether documents are exempt from discovery under the attorney work product doctrine is governed by federal law in diversity cases because work product is not a substantive privilege within the meaning of Federal Rule of Civil Procedure 501. The federal work product doctrine, as codified by Federal Rule of Civil Procedure 26(b)(3), provides for the qualified protection of documents and tangible things prepared by or for a party or that party's representative "in anticipation of litigation or for trial." A document need not be generated in the course of an ongoing lawsuit in order to qualify for work product protection. But "the primary motivating purpose" behind the creation of the document must be to aid in possible future litigation. As the advisory committee notes to Rule 26(b)(3) make clear, "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision."

Among the factors relevant to determining the primary motivation for creating a document are "'the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance.'" If the document would have been created without regard to whether litigation was expected to ensue, it was made in the ordinary course of business and not in anticipation of litigation.

Like all privileges, the work product doctrine must be strictly construed. The burden is on the party who seeks work product protection to show that the materials at issue were prepared by its representative in anticipation of litigation or for trial. A general allegation of work product protection is insufficient to meet this burden. Instead, a clear showing must be made which sets forth the items or categories objected to and the reasons for that objection. The proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the documents constitute work product. Although a privilege log and an *in camera* review of documents may assist the court in conducting its analysis, a party asserting the work product exemption still must provide a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure. In fact, resort to *in camera* review is appropriate only *after* the burdened party has submitted detailed affidavits and other evidence to the extent possible.

EXHIBIT A

*Id.* (cleaned up).

"If a party meets its burden and proves that the materials sought warrant work product protection, the party seeking discovery must prove why those materials should still be produced." *S.E.C. v. Brady*, 238 F.R.D. 429, 443 (N.D. Tex. 2006). A party may only obtain discovery of documents prepared in anticipation of litigation or for trial upon showing that the party seeking discovery has (1) substantial need of the materials to prepare for its case and (2) that the party cannot obtain the substantial equivalent of the materials by other means without undue hardship. *See* Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.").

But the work product rule accords "special protection to work-product revealing the attorney's mental processes." *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981). Rule 26(b)(3) instructs the court to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

-12-

**EXHIBIT A**

As such, "if the materials sought are opinion work-product then a court may compel discovery only if the party seeking the materials demonstrates a compelling need for the information." *Brady*, 238 F.R.D. at 443; *accord S.E.C. v. Cuban*, No. 3:08-cv-2050-D, 2012 WL 456532, at *2 & n.3 (N.D. Tex. Feb. 10, 2012).

And, as to waiver of work product protection, the Court has previously explained that

> [t]he work-product doctrine is very different from the attorney-client privilege with regard to possible waiver. Although the attorney-client privilege exists to protect the confidential communications between an attorney and client and, thus, is generally waived by disclosure of confidential communications to third parties, the work-product protection exists to "promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989). "Therefore, the mere voluntary disclosure to a third person is insufficient in itself to waive the work product privilege." *Id.* That is, "because the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the disclosure to a third party." *In re Grand Jury Subpoena*, 220 F.3d 406, 409 (5th Cir. 2000). But such a "disclosure does waive protection if it has substantially increased the opportunities for potential adversaries to obtain the information." *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 378 (5th Cir. 2010) (internal quotation marks omitted). And, for example, "the work product privilege is waived when the attorney requests the witness to disclose the information or when the attorney discloses the information to the court voluntarily or makes no objection when it is offered." *Shields*, 864 F.2d at 382.
> "Unlike the attorney-client privilege, the burden of proving waiver of work product immunity falls on the party asserting waiver." [*S.E.C. v. Brady*, 238 F.R.D. 429, 444 (N.D. Tex. 2006)]; *accord Ecuadorian Plaintiffs*, 619 F.3d at 379 & n.10 (party asserting work-product protection is not required to prove non-waiver). "If the party is successful, waiver of work product immunity will be limited to the materials actually disclosed." *Brady*, 238 F.R.D. at 444.

-13-

**EXHIBIT A**

> "What constitutes a waiver with respect to work-product materials depends, of course, upon the circumstances." *United States v. Nobles*, 422 U.S. 225, 239 n.14, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975).

*Mir v. L-3 Comm'ns Integrated Sys., L.P.*, 315 F.R.D. 460, 467 (N.D. Tex. 2016).

And, because Jolivet's claims are brought under federal law, "the federal common law of attorney-client privilege applies." *In re E.E.O.C.*, 207 F. App'x 426, 431 (5th Cir. 2006). As to the requirements for establishing the privilege in the first instance, the United States Court of Appeals for the Fifth Circuit has explained that

> [t]he attorney-client privilege is recognized as "the oldest of the privileges ... known to the common law." *United States v. Zolin*, 491 U.S. 554, 562, 109 S. Ct. 2619, 105 L. Ed. 2d 469 (1989) (internal quotation marks omitted). Its purpose is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* (internal quotation marks omitted); *see also In re Grand Jury Subpoena*, 419 F.3d 329, 338 (5th Cir. 2005). Simply stated, under this rule, "an attorney may not disclose his client's confidences."

*Id.* (citation omitted). "'The attorney-client privilege limits the normally broad disclosure requirements of Federal Rule of Civil Procedure 26.'" *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (quoting *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 472 (E.D. Pa. 2005)).

"For a communication to be protected under the [attorney-client] privilege, the proponent 'must prove: (1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.'" *Id.* (quoting

-14-

**EXHIBIT A**

*United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)). The Fifth Circuit has explained that "[t]here is no presumption that a company's communications with counsel are privileged"; that "[i]t is vital to a claim of [attorney-client] privilege that the communication have been made and maintained in confidence"; that a "confidential communication between client and counsel is privileged only if it is generated for the purpose of obtaining or providing legal assistance"; that "communications by a corporation with its attorney, who at the time is acting solely in his capacity as a business advisor, [are not] privileged," "nor are documents sent from one corporate officer to another merely because a copy is also sent to counsel"; and that "courts have stated that simply describing a lawyer's advice as 'legal,' without more, is conclusory and insufficient to carry out the proponent's burden of establishing attorney-client privilege." *Id.* at 696 (cleaned up). And, "where there is a mixed discussion of business and legal advice, courts should consider the 'context ... key,' ultimately seeking to glean the 'manifest purpose' of the communication." *Id.* (quoting *Exxon Mobil Corp. v. Hill*, 751 F.3d 379, 382 (5th Cir. 2014)).

The burden does not lie with the challenging party to "prove that [the withholding party] improperly asserted the attorney-client privilege as to its withheld documents." *Id.* Rather, "[d]etermining the applicability of the privilege is a 'highly fact-specific' inquiry, and the party asserting the privilege bears the burden of proof," and "'[o]nce the privilege has been established, the burden shifts to the other party to prove any applicable exceptions.'" *Id.* at 695 (quoting *Perkins v.*

-15-

**EXHIBIT A**

*Gregg Cty.*, 891 F. Supp. 361, 363 (E.D. Tex. 1995)). And "[a]mbiguities as to whether the elements of a privilege claim have been met are construed against the proponent." *Id.*

The Fifth Circuit has explained that, "[b]ecause the attorney-client privilege 'has the effect of withholding relevant information from the fact-finder,' it is interpreted narrowly so as to 'appl[y] only where necessary to achieve its purpose.'" *Id.* (quoting *Robinson*, 121 F.3d at 974). And, as another judge in this district has noted,

> courts generally recognize that a privilege cannot be used simultaneously as both a sword and a shield. *See, e.g.*, *Willy v. Admin. Review Bd.*, 423 F.3d 483, 497 (5th Cir. 2005) (stating that under doctrine of implied waiver, "a party may not use privileged information both offensively and defensively at the same time"); *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 n.18 (5th Cir. 1999) ("In accord with this principle is a client's inability to, at once, employ the privilege as both a sword and a shield.... Attempts at such improper dual usage of the privilege result in waiver by implication.")..... "In other words, when a party entitled to claim [a] privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege." *Willy*, 423 F.3d at 497.
>
> > The principle is often expressed in terms of preventing a party from using the privilege as both a shield and a sword. In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials. The party asserting the claim is said to have implicitly waived the privilege.
>
> *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (citations omitted). Thus a privilege "may implicitly be waived when [a] defendant asserts a claim that in fairness requires examination of protected communications." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).

-16-

**EXHIBIT A**

*Charalambopoulos v. Grammer*, No. 3:14-cv-2424-D, 2017 WL 1094394, at *3-*4 (N.D. Tex. Mar. 8, 2017) (citation omitted).

"Because the responding party is entitled to refuse to produce requested discovery if it is privileged or work product protected, the rules require that," "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim," FED. R. CIV. P. 26(b)(5)(A); *Victor Stanley*, 250 F.R.D. at 264; *see also BDO*, 876 F.3d at 697 n.3 ("Rule 26 provides that a party claiming the privilege shall describe the nature of withheld documents and communications 'in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege.' Fed. R. Civ. P. 26(b)(5)(A)(ii).").

This is often accomplished through a privilege log. "[A]lthough Rule 26 'does not attempt to define for each case what information must be provided,' 1993 Advisory Comm. Notes to Fed. R. Civ. P. 26 ¶ 33, a privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to test[ ] the merits of the privilege claim." *BDO*, 876 F.3d at 697 (cleaned up; citing *NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011)

-17-

**EXHIBIT A**

("When a party relies on a privilege log to assert these privileges, the log must 'as to each document ... set[ ] forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed.'" (quoting *Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993))).

"Typically, a privilege log must identify each document and provide basic information, including the author, recipient, date and general nature of the document." *S.E.C. v. Thrasher*, C.A. No. 92-6987, 1996 WL 125661, at *1 (S.D.N.Y. Mar. 20, 1996); *see also Victor Stanley*, 250 F.R.D. at 264-65 ("The most common way is by using a privilege log, which identifies each document withheld, information regarding the nature of the privilege/protection claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter. *See, e.g.*, Discovery Guideline 9.c.; Paul W. Grimm, Charles S. Fax, & Paul Mark Sandler, Discovery Problems and Their Solutions, 62-64 (2005) ('To properly demonstrate that a privilege exists, the privilege log should contain a brief description or summary of the contents of the document, the date the document was prepared, the person or persons who prepared the document, the person to whom the document was directed, or for whom the document was prepared, the purpose in preparing the document, the privilege or privileges asserted with respect to the document, and how each element of the privilege is met for that document.'). *Id.* at 62-63.").

**EXHIBIT A**

But, under appropriate circumstances, a party "can properly submit a log that is organized categorically and not 'document-by-document,'" "consistent with Rule 26(b)(5)(A)," *Manufacturers Collection Co., LLC v. Precision Airmotive, LLC*, No. 3:12-cv-853-L, 2014 WL 2558888, at *2 (N.D. Tex. June 6, 2014); *accord Fed. Deposit Ins. Corp. for Valley Bank v. Crowe Horwath LLP*, No. 17 CV 04384, 2018 WL 3105987, at *6 (N.D. Ill. June 25, 2018) ("But sometimes deciding a privilege dispute does not require the make-work of a document-by-document privilege log, so long as asserting categories of documents subject to the privilege is clear enough."); *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, No. 3:12-CV-00463, 2018 WL 3628890, at *1 (M.D. Tenn. Mar. 29, 2018) ("Where a document-by-document privilege log would be unduly burdensome and without much benefit, courts have permitted a categorical logging approach. Even where a categorical approach is used, however, the log must still provide information needed to evaluate claims of privilege, including the category, date range, authors and recipients, privilege asserted, and representations that the materials fall within the scope of the privilege." (cleaned up)), *aff'd sub nom. EPAC Techs., Inc. v. Thomas Nelson, Inc.*, No. 3:12-CV-00463, 2018 WL 3322305 (M.D. Tenn. May 14, 2018).

As noted above, satisfying Rule 26(b)(5)'s requirements as to each withheld document, communication, or tangible thing may also involve or require affidavits or declarations to make a showing of the items or categories withheld from production and the reason for their being withheld, with enough information for the

**EXHIBIT A**

requesting party to assess and the court to determine whether the withheld documents or information are privileged or are work product. *See Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 473-74 (N.D. Tex. 2004). "Continual failure to adhere to Rule 26's prescription may result in waiver of the privilege where a court finds that the failure results from unjustified delay, inexcusable conduct, or bad faith." *BDO*, 876 F.3d at 697.

And, again, before the Court undertakes in camera of any withheld materials, a party asserting privilege or the work product exemption must provide a detailed description of the materials in dispute and state specific and precise reasons for their claim of protection from disclosure, including submitting detailed affidavits and other evidence to the extent possible.

Conducting "an in camera review is not appropriate merely because a party requests the district court undertake the endeavor." *Jani-King Franchising, Inc. v. Jani-King (GB) Ltd.*, No. 3:13-CV-4136-P (BF), 2015 WL 12916409, at *1 (N.D. Tex. Feb. 6, 2015). In camera review "is not to be used as a substitute for a party's obligation to justify its withholding of documents" and "should not replace the effective adversarial testing of the claimed privileges and protections." *Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 700 (D. Nev. 1994); *see also Billy Goat IP LLC v. Billy Goat Chip Co. LLC*, No. 17-CV-9154, 2019 WL 10250940, at *4 (N.D. Ill. Feb. 1, 2019) ("Federal courts should certainly not be in the business of always conducting in camera reviews every time a party moves to compel

EXHIBIT A

documents identified on a privilege log. Privilege logs are the means by which the opposing party and the Court identify the basis of the privilege and ascertain whether the privilege is properly invoked without the need to go further. Attorneys also have their own professional responsibilities and duties to properly invoke the privilege, with a basis in fact and law, and not always be second-guessed by the courts when a proper and detailed privilege log has been produced.").

"Where there is a sufficient evidentiary showing that an issue exists regarding the application of a privilege, the court must utilize its own discretion and determine whether in camera review is appropriate under the circumstances presented." *Jani-King*, 2015 WL 12916409, at *1; *accord BDO*, 876 F.3d at 697 n.4 ("Given the serious nature of Bower's allegations through her affidavit and the lack of a countering affidavit from the party claiming privilege, we note that in camera review will likely be necessary."); *King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 721 (5th Cir. 2011) ("The district court based its decision not to review the individual e-mails for privilege on UHS's Fed. R. Civ. P. 26(b)(5) privilege log. The privilege log lists the authors and recipients of the e-mails, a brief description of each withheld communication, the amount of each document withheld, and the type of privilege asserted. A review of the privilege log entries confirms the district court's conclusion that it describes communications between client and attorney for the purpose of obtaining legal advice. The district court did not clearly err by deciding to credit these descriptions as accurate and concluding that UHS met its

EXHIBIT A

initial burden to show that it was entitled to protection by the privilege. In rebuttal, King has offered only speculation that the e-mails are not covered by privilege because they were made for a purpose other than obtaining legal advice. In such a situation, the district court did not err in declining to engage in a full in camera review of the challenged e-mails.").

The Court is persuaded by the following explanation by now-United States District Judge Paul W. Grimm regarding a proposed approach to resolving privilege and work product issues:

> In camera review [] can be an enormous burden to the court, about which the parties and their attorneys often seem to be blissfully unconcerned.
>
> For example, in order for the court to determine whether the attorney-client privilege was properly asserted regarding a particular document, the court must make the following fact determinations:
>
>> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.
>
> *In re Allen*, 106 F.3d 582, 600 (4th Cir. 1997) (holding also that "a district court's holding that the attorney-client privilege does not protect communications rest[s] essentially on determinations of fact"). *Id.* at 601. Sometimes the document itself makes this clear, such as when the lawyer writes to the client to provide an opinion and the correspondence reflects that it is a confidential communication. Often times, however, it is impossible to determine if the privilege applies without extrinsic evidence, which must be provided by affidavit,

EXHIBIT A

deposition transcript, or other source. The time it takes the court to review this extrinsic evidence on a document-by-document basis can be extensive, particularly given the tendency of lawyers to be over-inclusive in the assertion of privilege/protection in the first place. It should go without saying that the court should never be required to undertake in camera review unless the parties have first properly asserted privilege/protection, then provided sufficient factual information to justify the privilege/protection claimed for each document, and, finally, met and conferred in a good faith effort to resolve any disputes without court intervention.

....

    Thus, insuring that a privilege or protection claim is properly asserted in the first instance and maintained thereafter involves a several step process.

- First, pursuant to Fed. R. Civ. P. 26(b)(5), the party asserting privilege/protection must do so with particularity for each document, or category of documents, for which privilege/protection is claimed. At this first stage, it is sufficient to meet the initial burden by a properly prepared privilege log.
- If, after this has been done, the requesting party challenges the sufficiency of the assertion of privilege/protection, the asserting party may no longer rest on the privilege log, but bears the burden of establishing an evidentiary basis – by affidavit, deposition transcript, or other evidence – for each element of each privilege/protection claimed for each document or category of document. A failure to do so warrants a ruling that the documents must be produced because of the failure of the asserting party to meet its burden.
- If it makes this showing, and the requesting party still contests the assertion of privilege/protection, then the dispute is ready to submit to the court, which, after looking at the evidentiary support offered by the asserting party, can either rule on the merits of the claim or order that the disputed documents be produced for in camera inspection.

*Victor Stanley*, 250 F.R.D. at 265-67 (cleaned up and bullets added); *see also Total*

*Rx Care, LLC v. Great N. Ins. Co.*, 318 F.R.D. 587, 601, 602 (N.D. Tex. 2017) ("While

Total Rx cited to a case involving summary judgment briefing, here, Great Northern

had the burden on making the required showing to establish the claimed privilege

-23-

**EXHIBIT A**

and for a modification order and a protective order in its opening motion. It did not do so. And this missing level of detail and information comes too late when included for the first time in a reply. …. Accordingly, Great Northern failed to meet its burden to establish that any documents subject to the Subpoena are protective by the attorney-client privilege under Texas law and to meet its burden of showing that the Court should modify the Subpoena under Rule 45(d)(3)(A)(iii) or enter a Rule 26(c)(1) protective order. …. As with the claimed attorney-client privilege, Great Northern failed to come forward with evidence – prior to filing its reply – to establish that the 20 documents at issue (which Great Northern did not even specify in its Motion to Modify) were prepared by its counsel's representative in anticipation of litigation or for trial. Accordingly, here, too, Great Northern failed to meet its burden of showing that the Court should modify the Subpoena under Rule 45(d)(3)(A)(iii) or enter a Rule 26(c)(1) protective order." (cleaned up)).

But it is not appropriate "for a party to submit documents to the court for in camera inspection without first seeking leave to do so." *Green v. City of Asheville, N.C.*, No. 1:06cv27, 2006 WL 3825129, at *4 (W.D.N.C. Dec. 26, 2006).

And, "[a]s the Court has previously explained, a responding party 'cannot redact nonprivileged information from any responsive document because the information is not itself [responsive].'" *Jolivet v. Compass Grp. USA, Inc.*, No. 3:19-cv-2096-B, 2021 WL 90110, at *11 (N.D. Tex. Jan. 11, 2021) (quoting *Samsung Elec. Am., Inc. v. Chung*, 321 F.R.D. 250, 299 (N.D. Tex. 2017)).

**EXHIBIT A**

Analysis

## I. Moot matters

Defendant has now produced the document bates labeled COMPASS_003040
- 003043 without redactions. Whatever the implications of Defendant's producing it
with redactions in the first place, the Court agrees with Defendant that Jolivet's
request for in camera review of the document "to determine whether Defendant
improperly redacted" it, Dkt. No. 77 at 23, is moot.

## II. Specific withheld documents that Jolivet challenges

### A. The Clawback Document (COMPASS_004999_CONFIDENTIAL)

In her MTC, Jolivet argues that

> Defendant improperly invokes the clawback provisions of Fed. R. of
> Civ. P. 26 by, incorrectly, asserting the attorney-client privilege with
> respect to a document containing direct evidence of Defendant's
> retaliatory motive in terminating Plaintiff. See Def's Clawback Notice,
> (Pl's Ex. 4 at App. 055); Def's Clawback Document, (Pl's Ex. 7 at App.
> 100-105). Here, Defendant cannot use the attorney-client privilege
> "simultaneously as both a sword and a shield" to prevent access to key
> facts directly supporting Plaintiff's claim for relation.
>      Here, Defendant states in its motion for summary judgment that
> Plaintiff cannot establish a case for retaliation because Plaintiff
> allegedly "has no evidence to establish that any causal nexus exists
> between the protected activity and the adverse action alleged," and
> allegedly "has no evidence that any of Compass's proffered reasons are
> false. . . .;" and because, as Defendant contends, the "facts establishing
> [pretext arguments] simply do not exist." Def's Brief in Supp. Of Mot.
> Summ. J., [Doc. 73 at pp. 7-8, 49]. The taunting nature in Defendant's
> statements are glaringly obvious from the email communications that
> Defendant produced during discovery, but now is trying to claw back,
> which specifically state that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
> ▮▮▮▮▮▮▮      See Def's Clawback Notice, (Pl's Ex. 4 at App. 055);
> Clawback Document, (Pl's Ex. 7 at App. 103-104). Specifically,

-25-

<span style="color:red">**EXHIBIT A**</span>

- ███████████████████████████████████████████ See Clawback Document, (Pl's Ex. 7 at App. 104) (email authored by Tracy Vessillo on September 14, 2020, at 9:40 a.m.).

- ███████████████████████████████████████████ ██████████████ See Clawback Document, (Pl's Ex. 7 at App. 104) (email authored by Lisa Sherman on September 14, 2020, at 9:58 a.m.).

- ████████ See Clawback Document, (Pl's Ex. 7 at App. 103) (email authored by Tracy Vessillo on September 14, 2020, at 10:55 a.m.).

Now, after producing emails that contradict Defendant's statements in its motion for summary judgment and contain statements of direct evidence supporting Plaintiff's claims, Defendant improperly asserts that the email is privileged and is attempting to claw it back to prevent Plaintiff from having access to key evidence in support of her claims.

"The principle is often expressed in terms of preventing a party from using the privilege as both a shield and a sword. In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials. The party asserting the claim is said to have implicitly waived the privilege." *Charalambopoulos*, 2017 U.S. Dist. LEXIS at *9 (citation omitted). Thus, a privilege "may implicitly be waived when [a] defendant asserts a claim that in fairness requires examination of protected communications." *Id.*, at *9 (citation omitted).

"When a party waives privilege as to a particular communication, the waiver applies to all other communications relating to the same subject matter. 'The overarching goal of a waiver in such a case is to prevent a party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege as to unfavorable advice.'" *Stated in Glob. Tubing, LLC v. Tenaris Coiled Tubes, LLC*, No. 4:17-CV-3299, 2021 U.S. Dist. LEXIS 58700, at *10-11 (S.D. Tex. Mar. 26, 2021) (quoting *Pei-Hreng Hor v. Chu*, No. 4:08-cv-3584, 2010 U.S. Dist. LEXIS 112777, *10-11 (S.D. Tex. 2010) (internal quotations omitted)).

….

-26-

**EXHIBIT A**

"For a communication to be protected as privileged, the proponent must prove: '(1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.'" *In re Boeing Co.*, No. 21-40190, 2021 U.S. App. LEXIS 22602, at \*4 (5th Cir. July 29, 2021) (quoting *BDO USA, L.L.P.*, 876 F.3d at 695); *Stoffels v. SBC Commc'ns, Inc.*, 263 F.R.D. 406, 411 (W.D. Tex. 2009) (internal citations omitted).

However, in the email communications (fourteen emails) exchanged over a two (2) day period –September 14 and 15, 2020 – Ms. Sherman makes statements ███████████████████████████ *See* Clawback Document, (Pl's Ex. 7 at App. 104) (email communication authored by Lisa Sherman on September 14, 2020 at 9:58 a.m.). Indeed, Ms. Sherman initiated the communications ███████████████████████████████████ Id. (Pl's Ex. 7 at App. 104-105) (email communication authored by Lisa Sherman on September 14, 2020 at 8:54 a.m.). In response to Ms. Sherman's inquiry, Ms. Cerrati provides her insight by stating ███████████████████████████████ Id. (Pl's Ex. 7 at App. 104) (email communication authored by Robin Cerrati on September 14, 2020 at 9:39 a.m.). Tracy Vessillo opines ████████████████████████████████████████ Id. (Pl's Ex. 7 at App. 104) (email communication authored by Tracy Vessillo on September 14, 2020, at 9:40 a.m.). Thereafter, Mr. Vessillo reports ███████████████████████████████ Id. (Pl's Ex. 7 at App. 103) (email communication authored by Tracy Vessillo on September 14, 2020 at 10:55 a.m.)

In other words, the clawback document contains nonprivileged statements that are direct evidence of Defendant's retaliatory motive in terminating Plaintiff. *See Martin v. J.A.M. Distrib. Co.*, 674 F. Supp. 2d 822, 845 (E.D. Tex. 2009) ("In the context of Title VII, direct evidence includes any statement or document which shows on its face that an improper criterion served as a basis – not necessarily the sole basis, but a basis--for the adverse employment action."); *see also Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 195 (5th Cir. 2001) ("In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face.'") (citing

-27-

**EXHIBIT A**

*Portis*, 34 F.3d at 329; *cf. Rubinstein*, 218 F.3d at 402 (finding that a dean's testimony that he denied a professor a pay raise because the professor filed a discrimination suit against the university 'could be no more direct on the issue of retaliation'")).

In *Martin*, based on direct evidence (i.e., the plaintiff's manager's statements in an email), the court denied summary judgment because the statements presented a genuine issue of material fact regarding whether the defendant's motivation for terminating plaintiff was "at least in part retaliatory." *Id.* (internal citations omitted). Indeed, Plaintiff's ability to supply direct evidence of retaliation changes the applicable legal framework for analysis of Plaintiff's retaliation claim. *See e.g.*, *Id.* at 844 (". . . if the plaintiff submits direct evidence of discriminatory animus, then he is entitled to bypass the McDonnell Douglas framework usually applied.") (internal citations omitted).

Accordingly, direct evidence of Defendant's retaliatory motive in terminating Plaintiff is highly relevant to the claims in this lawsuit, including Plaintiff's ability to fully respond to the assertions made in Defendant's Motion for Summary Judgment. *Compare* Def's Br. Summ. J., [Doc. 73 ECF pp. 49-50] (asserting Plaintiff does not allege any "allegedly retaliatory comments made by decision-makers or other WPC officials" in support of Plaintiff's retaliation claim), *with* Clawback Document (Pl's Ex. 7 at App. 103-105) (containing retaliatory statements made by decision-makers and Wolfgang Puck Catering officials).

Moreover, to the extent the clawback document "intertwine[s] business and legal advice, attorney-client privilege protects the communication only if the legal advice predominates." *Earl v. Boeing Co.*, Civil Action No. 4:19-cv-507, 2021 U.S. Dist. LEXIS 47487, at *9 (E.D. Tex. 2021) *vacated on other gr'nds by, In re Boeing Co.*, 2021 U.S. App. LEXIS 22602 (5th Cir. 2021) (holding district court did not clearly err by finding email communications involving in-house counsel conclusory labeled as "legal advice" were not privileged). Accordingly, "[c]ontext here is key." *Exxon Mobil Corp. v. Hill*, 751 F.3d 379, 382 (5th Cir. 2014) (finding in-house counsel's drafted response to another company protected by attorney-client privilege when purpose of the draft was to disclaim plaintiff's liability and any "implied warranties during complex negotiations").

While, in the corporate setting, the attorney-client privilege may apply to communications with in-house counsel, "the attorney-client privilege attaches only to communications made for the purpose of giving or obtaining legal advice or services, not business or technical

**EXHIBIT A**

advice or management decisions." *Stoffels*, 263 F.R.D. at 411 (citations omitted) (emphasis added). Here, the clawed back document contains email communications involving Wolfgang Puck Catering President, Tracy Vessillo, Wolfgang Puck Catering Vice President of Human Resources, Robin Cerrati, and in-house counsel, Lisa Sherman Esq ("Ms. Sherman"). *See* Clawback Document, (Pl's Ex. 7 at App. 100-105). However, statements in the clawed-back document by in-house counsel, Ms. Sherman, demonstrate she was "acting solely in [her] capacity as a business advisor" to make a managerial decision. *BDO USA, L.L.P.*, 876 F.3d at 696.

Moreover, the communication was about making a managerial decision ███████████████████████████████████████ In context, the business and managerial advice (i.e., whether to terminate Plaintiff) predominate any legal advice or opinion regarding mediation or settlement of Plaintiff's lawsuit. *See* Clawback Document, (Pl's Ex. 8 at App. 100-105). In fact, only five (5) of the fourteen (14) emails mention mediation or settlement. Still, any legal advice or opinion in the clawback document may be protected by redaction. *Moser v. Navistar Int'l Corp.*, Civil Action No. 4:17-CV-00598, 2019 U.S. Dist. LEXIS 17182, at *15 (E.D. Tex. 2019) (holding that portions of document were privileged while others were not and ordering production of document with privileged portions redacted).

In addition, the clawback document contains other plainly nonprivileged statements regarding ███████████████████████ ████████████████████████████████████ specifically statements such as —

- ████████████████████████████████ *See* Clawback Document, (Pl's Ex. 7 at App. 104) (email authored by Robin Cerrati on September 14, 2020, at 9:39 a.m.)

- ████████████████████████████████ See Clawback Document, (Pl's Ex. 7 at App. 104) (email authored by Tracy Vessillo on September 14, 2020, at 9:40 a.m.).

- ████████████████████████████████ See Clawback Document, (Pl's Ex. 7 at App. 104)

-29-

**EXHIBIT A**

(email authored by Lisa Sherman on September 14, 2020, at 9:58 a.m.).

- ███████████████████████ See Clawback Document, (Pl's Ex. 7 at App. 103) (email authored by Tracy Vessillo on September 14, 2020, at 10:55 a.m.).

- ███████████████████████ See Clawback Document, (Pl's Ex. 7 at App. 103) (email authored by Tracy Vessillo on September 14, 2020, at 12:01 p.m.).

These statements rebut several of the allegations made in Defendant's pending motion for summary judgment [Doc. 72].

Furthermore, the clawback document also calls into question the credibility of testimony given by Ed Ancewicz, Plaintiff's supervisor at Wolfgang Puck Catering. Compare Clawback Document, (Pl's Ex. 7 at App. 104) (email authored by Tracy Vessillo on September 14, 2020, at 9:40 a.m., stating ███████████████████████ and Clawback Document, (Pl's Ex. 7 at App. 103) (email authored by Tracy Vessillo on September 14, 2020, at 10:55 a.m., stating ███████████████████████ ), with Ed Ancewicz Depo, 61:21-62:2 (Pl's Ex. 5 at App. 060-061) (Q. Did you talk with Tracy more about Michelle's lawsuit after that first phone call? A. No. Actually I think my response was I'm better off not knowing anything that's going on…"), and Ed Ancewicz Depo, 63:6-8 (Pl's Ex. 5 at App. 062) ("Q. Did Tracy – did he every follow up with you about anything to do with Michelle's lawsuit? A. No."), and Ed Ancewicz Depo, 63:16-22 (Pl's Ex. 5 at App. 062) (testifying that Mr. Ancewicz "didn't get into the details [regarding Plaintiff's lawsuit] with anybody other than [Plaintiff]"). Accordingly, pursuant to Rule 26(b)(5)(B), Plaintiff respectfully requests in camera review and an order overruling Defendant's assertion of attorney-client privilege and clawback protection. See Fed. R. Civ. P. 26(b)(5)(B); Clawback Document, (Pl's Ex. 7 at App. 100-105).

Dkt. No. 77 at 2-11 (citations and footnotes omitted).

Defendant responds that

[t]he email communications between in-house counsel, Cerrati, and Vessillo "regarding Plaintiff's employment, mediation, and potential settlement" were listed on Defendant's Third Amended Privilege Log,

EXHIBIT A

produced to Plaintiff on June 8, 2021. *See* APP 004-006. Not only were these communications included on that log, but that same combination of authors, recipients, and description was listed six separate times. *See id*. The Clawback Document is one version of that same string of protected emails, which are all from and to in-house counsel regarding the then-upcoming mediation of the instant action and potential settlement offers to be made by Defendant at such mediation. *See generally* Motion App. at Ex. 7 (App. 100-05). The Clawback Document was inadvertently produced to Plaintiff amidst Defendant's production of 752 native email files on July 26, 2021. Realizing the error, Defendant promptly notified Plaintiff's counsel of the inadvertent production and invoked the clawback provision of Federal Rule 26(b)(5) on July 30, 2021. Defendant thereafter produced a Fourth Amended Privilege log on August 12, 2021, which added, inter alia, the Clawback Document referenced by Bates number (in addition to the six other privilege log entries for communications within this same chain of emails). *See* Motion App. at Ex. 1 (App. 001-41).

....

Despite being alerted by Defendant's Third Amended Privilege Log on June 8, 2021, that the Clawback Document and related communications in the same string of emails were being withheld based on the attorney-client privilege, Plaintiff did not make any objections or motions with respect to such documents until August 19, 2021, nearly three weeks after Defendant's inadvertent production and prompt recall of the Clawback Document on July 30, 2021, and mere days before her response to Defendant's Motion for Summary Judgment was due. Plaintiff now claims that Defendant should not be permitted to assert attorney-client privilege because the communications "contain[] direct evidence of Defendant's retaliatory motive in terminating Plaintiff," and that such communications are not privileged because they supposedly discuss business issues, rather than seek assistance in a legal proceeding. *See* Motion at pp. 2, 6. However, the attorney-client privilege is unmistakably applicable here, and Plaintiff has not established any exception thereto.

There can be no question that the Clawback Document and other communications within that same email chain discussing the then-upcoming mediation of this matter are protected by the attorney-client privilege. The communications within this email thread are (i) confidential communications (ii) made from and to a lawyer (iii) "for the primary purpose of securing either a legal opinion, legal services, or assistance in a legal proceeding." *SEC v. Microtune, Inc.*, 258 F.R.D. 310, 315 (N.D. Tex. 2009). Plaintiff takes only selected

-31-

EXHIBIT A

sentences from the chain, mischaracterizes them, and claims that they show "direct evidence" of Defendant's supposed retaliatory motive which Plaintiff would need in order to resist Defendant's Motion for Summary Judgment, and claims Defendant should be barred from asserting privilege "as both a sword and a shield." *See* Motion at pp. 2-5; cf. Motion at pp. 6-7 (claiming "Mr. Ancewicz believes that Plaintiff is a 'risk' due to her pending litigation and 'agrees' with [the] decision to terminate Plaintiff) with Motion App. at Ex. 7 (App. 103-104) (Mr. Ancewicz agreeing to in-house counsel's suggestion to offer separation with other settlement terms and acknowledging that there was a "risk" that if Defendant terminated Plaintiff's employment "at a later date" Plaintiff would assert a claim for retaliation (i.e. he acknowledged a risk of future litigation)). Here, Defendant has never sought to use its privileged internal settlement communications as a "sword" in any claims against Plaintiff or any affirmative defense Defendant has asserted in this matter. It is sine qua non that privileged documents are evidence that an opposing party could potentially otherwise use in support of its claims or defenses: if a privileged document was not both relevant and responsive to the opposing party's discovery requests, the document would not be included on the producing party's privilege log. See FED. R. CIV. P. 26(b)(5) (requiring a privilege log only as to "information otherwise discoverable" which the producing party has withheld from its discovery responses "by claiming that the information is privileged or subject to protection as trial-preparation material"). However, none of the case law cited by Plaintiff on this issue supports her position that a requesting party is entitled to the production of another party's privileged communications because they are or may be relevant to the claims asserted by the requesting party.

Plaintiff also contends that the correspondence at issue was initiated by in-house counsel "for a business purpose – to ███████████████████████████████████████████ ████████████ Motion at p. 6 (alterations in original). However, Plaintiff omits what precedes the cherry-picked comment, which was a statement by in-house counsel that ████████████ ██████████████████████████████████████████████ ███████████████ Motion App. at Ex. 7 (App. 104). That these communications between Defendant's employees and in-house counsel involved discussions of potential settlement offer terms that included the separation of Plaintiff's employment does not change the nature of the conversation. See, e.g., id. at App. 103 (President of WPCE asking

-32-

**EXHIBIT A**

in-house counsel, ████████████████████████████████
████████). Clearly, the conversation is not regarding "business or technical advice or management decisions," but rather consists of "communications made for the purpose of giving or obtaining legal advice or services[.]" Motion at p. 9 (citing *Stoffels v. SBC Commc'ns, Inc.*, 263 F.R.D. 406, 411 (W.D. Tex. 2009).

       Accordingly, the attorney-client privilege applies, and Plaintiff should be prohibited from using or disclosing the Clawback Document in any way. *See* Fed. R. Civ. P. 26(b)(5)(B).

Dkt. No. 89 at 4-5, 9-12 (footnotes and citations omitted).

Jolivet replies that

       Defendant complains that the Clawback Document statements are "cherry-picked"" out of context and that "such evidence, so presented, could potentially be 'really good for Plaintiff's case' is not a basis for the Court to rule that" the document is not privileged. *See* Def's Resp., [Doc. 89 at pp. 1-2]. However, the Clawback Document statements when read independently do not lose their original meaning – other statements in the Clawback Document (e.g., statements regarding mediation scheduling, settlement amount offered to Plaintiff, WPC contribution to settlement amount) are not needed to understand the meaning of the statements demonstrating evidence of retaliation. The nonprivileged statements in the Clawback Document independently demonstrate:

1. ███████████████████████████████████████████
███████████████████████████████████████

2. ████████████████████████████████████████████

3. Ed Ancewicz and Tracy Vessillo discussed Plaintiff's lawsuit as late as September 14, 2020.

4. Defendant was concerned about ████████████████████████
███████████████████████████████████████████████
████████████████████████

5. ████████████████████████████████████████████████

6. ████████████████████████████████████████████████
██████████

7. Lisa Sherman, Robin Cerrati, and Tracy Vessillo had a call to discuss Plaintiff's lawsuit on September 15, 2020.

**EXHIBIT A**

Even if the statements were not direct evidence of retaliation, the statements may still be used to demonstrate that Defendant's proffered reason for terminating Plaintiff 11 is false (i.e. pretextual), and instead, Defendant terminated Plaintiff in retaliation for her protected activity. Defendant even concedes that "[i]n reduction-in-force cases, plaintiffs have attempted to establish pretext by demonstrating ... that comments made by company officials suggested a motivation related to the protected characteristic." Def's Br. In Supp. Mot. Summ J, [Doc. 73 at p. 43] (citing *Kilgore v. Brookeland Ind. School Dist.*, 538 Fed. Appx. 473, 475 (5th Cir. 2013)). Yet, here, Defendant seeks to prevent Plaintiff from the opportunity to demonstrate pretext using the statements – regardless of whether a jury would ultimately determine that the statements in fact demonstrate Defendant's retaliatory motive in terminating Plaintiff (i.e., pretext evidence). In fact, Defendant demonstrates how the statements could be used by the parties to dispute pretext:

> "Plaintiff takes only selected sentences from the chain, mischaracterizes them, and claims that they show 'direct evidence' of Defendant's supposed retaliatory motive which Plaintiff would need in order to resist Defendant's Motion for Summary Judgment, and claims Defendant should be barred from asserting privilege 'as both a sword and a shield.' *See* Motion at pp. 2-5; cf. Motion at pp. 6-7 (claiming



) with Motion App. at Ex. 7 (App. 103-104) (

."

*See* Def's Resp. [Doc. 89 at p. 10] (emphasis in original) (footnote omitted). In addition, in a footnote, Defendant discusses ongoing layoffs within its business to explain                                          *See* Def's Resp. [Doc. 89 at p. 10]. However, Defendant offers this post hac explanation of Mr. Ancewicz's mental impressions despite the communications making zero mention of the COVID-19 pandemic, decline in Defendant's business, lay-off cycles, or other eliminated job positions. *See* Clawback Document, [Doc. 78 at ECF pp. 102-107 of 107].

-34-

**EXHIBIT A**

> Furthermore, even if not offered to support Plaintiff's prima facie case, the statements may also be used as evidence calling into question the credibility of Plaintiff's supervisor, Ed Ancewicz. See e.g., Pl's Mot. Compel, [Doc. 77 at pp. 10-11] (comparing statements in Clawback Document with Ed Ancewicz's testimony regarding conversations he had pertaining to Plaintiff's lawsuit).

Dkt. No. 95 at 1-2, 5.

Whether or not the Clawback Document contains statements that are relevant to Jolivet's claims or probative of factual elements of the case or even particularly helpful to Jolivet as the requesting party have, as a general matter, no bearing on whether the Court should overrule Defendant's claim of attorney-client privilege over the Clawback Document. "This is not a case in which a party has asserted a claim or defense that explicitly relies on the existence or absence of the very communications for which he claims a privilege." *In re Burlington N., Inc.*, 822 F.2d 518, 533 (5th Cir. 1987) And "[r]elevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, ... even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue. Attorney/client documents may be quite helpful [to an adversary's argument], but this is not a sufficient basis for abrogating the privilege." *In re Itron, Inc.*, 883 F.3d 553, 561 (5th Cir. 2018) (cleaned up).

The Court concludes, based on a review of the Clawback Document [Dkt. No. 78 at 101-107 of 107] and the record before it, in light of the parties' arguments, that Defendant has proven that, along with the documents covered by the related challenge privilege log entries, this document is a privileged attorney-client

-35-

**EXHIBIT A**

communication that was confidential and for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding, and that there is no basis to find that Defendant implicitly waived the privilege by asserting a claim or defense that, in fairness, requires examination of protected communications.

The Court therefore determines that Defendant appropriately clawed back "COMPASS_004999_CONFIDENTIAL" as an inadvertently produced privileged document.

## B. Email communications "regarding payment to Plaintiff"

In her MTC, Jolivet explains that,

[o]n September 12, 2018, Plaintiff emailed Toni Soccio (human resources representative) an "HR request" for assistance in receiving backpay compensation and Plaintiff's belief she was being treated differently than her male peers by being placed on a PIP and final documentation. *See* Def's Doc. Produc., (Pl's Ex. 6 at App. 081-083) (COMPASS_003613-3615). Ms. Soccio informed Plaintiff that Diane Carr (human resources representative) would lead an investigation. *Id.* Thereafter, on September 24, 2020, Plaintiff emailed Diane Carr factual information regarding her HR request. *See* Def's Doc. Produc., (Pl's Ex. 6 at App. 078) (COMPASS_003570). However, Defendant redacted more than three (3) pages of the complete email chains. Id. (Pl's Ex. 6 at App. 077, 079-081) (COMPASS_003569, 003611-3613). Defendant's privilege log describing communications "regarding payment to Plaintiff" are the only entries in Defendant's privilege log which occurred within the same time frame as Plaintiff's HR request (i.e, 2018). *See* Def's Fourth Amend. Privilege Log, (Pl's Ex. 1 at App. 002-003); *See* Def's Doc. Produc., (Pl's Ex. 6 at App. 081-083) (COMPASS_003613-3615). Therefore, Plaintiff seek in camera review of the email communications "regarding payment to Plaintiff" to ensure further information pertaining to Defendant's investigation of Plaintiff's report of disparate treatment on the basis of sex (i.e., pretext evidence), managerial decisions (i.e., payment of back wages due to

EXHIBIT A

Plaintiff), and decision-makers' statements regarding Plaintiff's report of being treated differently than male peers (i.e., retaliation evidence) have not been improperly withheld.

Dkt. No. 77 at 16-17.

Defendant responds that

[t]he emails "regarding payment to Plaintiff" contain discussions between Defendant's employees and in-house counsel. See Supplement App. at Ex. 2 (App. 002-03). These discussions centered around Plaintiff's September 2018 request for "backpay" in connection with Defendant's payroll system not being properly updated in 2017 after Plaintiff transferred to a new position at a higher salary. *See* Plaintiff's Brief in Response to Defendant's Motion for Summary Judgment [Doc. # 84] at p. 42 ("September 12, 2018: Complaint and HR request by Ms. Jolivet to Soccio and Carr, requesting… HR to assist me getting my back pay from when I [was] underpaid for a year."). Two of the six emails within that chain contain requests for legal advice specifically directed to Defendant's in-house counsel. APP 001-002. In the spirit of cooperation, Defendant produced that email chain and redacted only the portions of the conversation explicitly directed to in-house counsel; the follow-up communications among payroll employees and human resources officials discussing how to address the pay issue following receipt of legal advice from Sherman have not been redacted. *See* Supplement at pp. 1-2; *accord* Supplement App. at Ex. 2 (App. 002-03). ….

On August 25, 2021, Defendant produced two documents to Plaintiff, one of which was the email string constituting the four entries on Defendant's Fourth Amended Privilege Log described as "email communication regarding payment to Plaintiff." *See* Supplement at pp. 1-2. Concurrently with such production, Defendant's counsel attempted to confer with Plaintiff's counsel by email to determine whether Plaintiff still wished to pursue the in camera inspection of those documents. *See* Supplement at Ex. 1 (App. 001) (Defendant's counsel requesting Plaintiff's counsel "[p]lease confirm that this production addresses the concerns asserted in Plaintiff's Motion to Compel with respect to these two documents, and that an in camera review is no longer requested by Plaintiff regarding these two items." (emphasis added). Plaintiff did not respond to that email, but instead filed her Supplement to the Motion to Compel.

**EXHIBIT A**

Assuming, then, that Plaintiff still seeks judicial review of the "payment to Plaintiff" emails, the remaining redactions of attorney-client communications therein were entirely proper. The string of emails, exclusively between and among Defendant's employees, contained comments directed to in-house counsel expressly requesting legal advice with respect to potential future litigation. APP 001-002. The redaction of those comments from the produced document are entirely proper, and Plaintiff has asserted no argument or legal authority in support of her claim that such redactions should be reviewed by this Court. *See* Motion at pp. 16-17 (requesting in camera review "to ensure further information pertaining to [Plaintiff's claims] have not been improperly withheld"); *see also* Supplement at p. 1-2 (claiming that Defendant was "withholding this document in its entirety based on a false assertion of attorney-client privilege" but asserting no basis to challenge the redacted information's privilege).

Accordingly, the Court should deny Plaintiff's baseless request for an in camera review of the redacted privileged information.

Dkt. No. 89 at 4.

Jolivet replies that

[i]n response to the Court's Order to support the claims of privilege and work product, Defendant provided a two-page declaration from its counsel of record, excerpts from Defendant's Third Amended Privilege Log, and two (2) discovery letters Defendant's counsel previously sent to Plaintiff's counsel during the course of litigating this dispute. *See* Def's App. In Sup. Def's Resp, [Doc. 90 at ECF p. 1 of 15]. However, as discussed below, this evidence fails to support Defendant's asserted claims of privilege or work product.

First, Defendant attempts to supports its claims of privilege by attaching a two-page declaration from its counsel of record, Stephen Roppolo. *See* Roppolo Decl., [Doc. 90 at ECF pp. 3- 4]. In his declaration, Mr. Roppolo generally states that "[t]he last two line items on page 2 and the first three lines on page 3 of Defendant's Fourth Amended Privilege Log" (i.e., withheld email communications "regarding payment to Plaintiff") "contain requests for legal advice specifically directed to [Lisa Sherman]," in-house counsel. *See* Roppolo Decl., [Doc. 90 at ECF pp. 3-4 of 15, ¶3]; Def's Fourth Amend. Priv. Log, [Doc. 78 at ECF pp. 4-5 of 107].

Other than these conclusory assertions in Mr. Roppolo's declaration, Defendant provides no further detail illuminating the

EXHIBIT A

context of statements directed to Sherman, and therefore provides no insight to the "'manifest purpose' of the communication." *BDO USA, L.L.P.*, 876 F.3d at 696 (quoting *Exxon Mobil Corp. v. Hill*, 751 F.3d 379, 382 (5th Cir. 2014)). Even if the communications are "specifically directed to Sherman," the communication may nonetheless be nonprivileged. *See Id.* at 696 ("simply describing a lawyer's advice as 'legal,' without more, is conclusory and insufficient to carry out the proponent's burden of establishing attorney-client privilege"); *see also Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 474 (N.D. Tex. 2004) (holding that plaintiff's claim of privilege to all documents "because they were made by or sent to in-house or outside counsel at a time when [plaintiff] was considering possible litigation" was improper "categorical approach to the attorney-client privilege") (citation omitted).

....

  Accordingly, since Defendant failed to provide the Court with detailed affidavits or any other evidence to support its claims of privilege, Plaintiff respectfully requests that Defendant be ordered to produce the contested documents to the Court for in camera review. *See* Order, [Doc. 80]; *Zenith Ins. Co.*, 328 F.R.D. at 173 (conducting in camera review after review of affidavit and privilege log).

Dkt. No. 95 at 1-2, 5.

  After reviewing Mr. Roppolo's declaration and Defendant's privilege logs and the parties' briefing and related submissions, the Court determined that, as to the contested email communications "regarding payment to Plaintiff," an in camera review of may assist the Court in making a final determination as to Defendant's privilege claim and directed Defendants' counsel to deliver a copy of the documents to the undersigned for in camera review. See Dkt. No. 96.

  Based on that in camera review, the Court determines that Defendant properly redacted, as privileged, communications with in-house counsel Lisa Sherman from the versions of the email chain produced to Jolivet.

-39-

**EXHIBIT A**

### C.   "Meeting invitation" organized by Pamela Brunson

In her MTC, Jolivet explains that

Defendant withheld a "meeting invitation scheduling call regarding Jolivet lawsuit" organized by Pamela Brunson on October 22, 2020 (but not describing other participants). *See* Def's Fourth Amend. Privilege Log, (Pl's Ex. 1 at App. 008). However, "merely logistical matters," such as "setting the date and agenda for a meeting" are not protected by the attorney-client privilege. *AHF Cmty. Dev., LLC*, 258 F.R.D. at 147. Presumably, the meeting included other Wolfgang Puck Catering officials and decisionmakers. *Compare* [] Def's Fourth Amend. Privilege Log, (Pl's Ex. 1 at App. 008) (meeting invitation scheduling call regarding Jolivet lawsuit on October 22, 2020), *with* Ed Ancewicz Depo, 114:14-19 (Pl's Ex. 8 at App. 063) ("Q. Okay. So at least by October 22nd, you knew that Michelle was going to be terminated, correct? A. Yes."), *and* Def's Doc. Produc. (Pl's Ex. 6 at App. 097) (COMPASS_004987) (email communication from Tina Lovell to Robin Cerrati, Ed Ancewicz, and Lisa Grens on October 22, 2020 at 6:10 p.m. attaching severance worksheet for Plaintiff). Therefore, Plaintiff seeks in camera review of the withheld meeting invitation to ensure further nonprivileged evidence of retaliation is not withheld from Plaintiff. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (per curiam) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close.") (internal quotation marks and citation omitted)).

Dkt. No. 77 at 17-18.

Defendant responds that,

[a]s to the privilege log entry regarding a meeting invitation attaching a spreadsheet titled "RDTX.xlsx," Defendant inadvertently omitted from its Privilege Log the identities of the other individuals that were a party to those communications. *See* [Motion App. at Ex. 1 (App. 008)]. However, the email string at issue was between Defendant's non-legal employees and in-house counsel discussing and attaching a document created at the request of in-house counsel in connection with potential additional claims by Plaintiff. APP 002.

-40-

**EXHIBIT A**

....

The next specifically identified item in Plaintiff's Motion was an email string between Defendant's non-legal employees and in-house counsel that (i) included a document prepared at in-house counsel's direction in anticipation of future litigation, and (ii) requested a meeting to discuss same. APP 002. Pursuant to the Federal Rules and applicable case law, such attorney work product is privileged and immune from production. *See* FED. R. CIV. P. 26(b)(3), *S.E.C. v. Brady*, 238 F.R.D. 429, 441 (N.D. Tex. 2006).

Because Defendant has met its burden to prove the documents sought warrant protection, "the party seeking discovery must prove why those materials should still be produced." *Brady*, 238 F.R.D. at 443; *accord Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury*, 768 F.2d 719, 721 (5th Cir. 1985). Therefore, Plaintiff may only obtain discovery of this work-product document by proving she has (1) substantial need of the materials to prepare her case and (2) that she cannot obtain the substantial equivalent of the materials by other means without undue hardship. *See* FED. R. CIV. P. 26(b)(3). Neither in the Motion or the Supplement does Plaintiff even allege – let alone prove – either of these required showings. *See Mir v. L-3 Communications Integrated Sys., L.P.*, 315 F.R.D. 460, 468, 472 (N.D. Tex. 2016) (noting the plaintiff "[did] not attempt to obtain the materials by a showing of substantial need and inability to obtain the substantial equivalent by other means without undue hardship" and that, "'[w]ithout this information, the Court cannot grant plaintiff's request for production of the documents'") (quoting *West v. Marion Labs*, No. 90–0661–CV–W-2, 1991 WL 517230, at *3 (W.D. Mo. Dec. 12, 1991)).

As such, Plaintiff is not entitled to the production of this work-product document.

Dkt. No. 89 at 5, 12-13.

Jolivet replies that,

[i]n response to the Court's Order to support the claims of privilege and work product, Defendant provided a two-page declaration from its counsel of record, excerpts from Defendant's Third Amended Privilege Log, and two (2) discovery letters Defendant's counsel previously sent to Plaintiff's counsel during the course of litigating this dispute. *See* Def's App. In Sup. Def's Resp, [Doc. 90 at ECF p. 1 of 15]. However, as

discussed below, this evidence fails to support Defendant's asserted claims of privilege or work product.

....

[W]ith respect to "[t]he second line item on page 8 of the Privilege Log" (i.e., "meeting invitation scheduling call regarding Jolivet lawsuit, Date: 10/22/20, Attachment: RDTX.xlsx"), Mr. Roppolo generally states that the Excel file ("RDTX.xlsx") was "compiled at Sherman's request to assist her in providing legal advice in connection with potential future claims by Plaintiff." *See* Roppolo Decl., [Doc. 90 at ECF p. 4 of 15, ¶4]; Def's Fourth Amend. Priv. Log, [Doc. 78 at ECF p. 10 of 107]. Yet, Mr. Roppolo provides no further detail regarding the subject-matter of information contained in the document, who compiled the information in the Excel document, the basis of his knowledge, when the document was created, whether other similar documents are maintained with respect to Defendant's other employees, who had/has access to the document, what the purpose of attaching the document to the meeting invitation was, or any other detailed information that could assist the court in evaluating Defendant's claim of privilege. *See Ackerman McQueen, Inc. v. Stinchfield*, No. 3:19-cv-3016-X, 2020 U.S. Dist. LEXIS 241209, at *8 (N.D. Tex. 2020) (quoting *Zenith Ins. Co.*, 328 F.R.D. at 162); *see also United States ex rel. Mitchell v. CIT Bank, N.A.*, Civil Action No. 4:14-CV-00833, 2021 U.S. Dist. LEXIS 140307, at *16 (E.D. Tex. 2021) (holding defendant did not carry burden as to assertion of attorney-client privilege after offering "nothing more than the conclusory 'prepared at direction of in-house and outside counsel' label in its privilege log" and "little to no explanation as to why these documents should be protected."); *Hamdan*, 2021 U.S. Dist. LEXIS at *12.

....

Accordingly, since Defendant failed to provide the Court with detailed affidavits or any other evidence to support its claims of privilege, Plaintiff respectfully requests that Defendant be ordered to produce the contested documents to the Court for in camera review. *See* Order, [Doc. 80]; *Zenith Ins. Co.*, 328 F.R.D. at 173 (conducting in camera review after review of affidavit and privilege log).

Dkt. No. 95 at 3-4, 5.

After reviewing Mr. Roppolo's declaration and Defendant's privilege logs and the parties' briefing and related submissions, the Court determined that, as to the

-42-

documents covered by the privilege log entry regarding a meeting invitation attaching a spreadsheet titled RDTX.xlsx, an in camera review of may assist the Court in making a final determination as to Defendant's privilege claim and directed Defendants' counsel to deliver a copy of the document to the undersigned for in camera review. See Dkt. No. 96.

Based on that in camera review, the Court determines that Defendant properly withheld, as protected work product, the documents covered by the privilege log entry regarding a meeting invitation attaching a spreadsheet titled RDTX.xlsx. And Jolivet has not made or attempted to make the showings that Rule 26(b)(3) requires.

## III. <u>Amending the log and in camera review of all withheld documents</u>

Having carefully reviewed Defendant's Fourth Amended Privilege Log, the Court finds that Defendant need not amend the log to add more detail in order to comply with Rule 26(b)(5), with which the Court determines that the log sufficiently complies.

And "[t]he Court does not believe it is necessary at this time to conduct an in camera review of Defendant's entire privilege log and declines Plaintiff's invitation to do so." *Gillani Consulting, Inc. v. Ferguson Enterprises, Inc.*, No. 3:07-cv-1488-O, 2010 WL 11583174, at *12 (N.D. Tex. June 8, 2010).

Neither a single allegedly improperly withheld document – which the Court has now determined was properly clawed back – nor Jolivet's four other asserted

**EXHIBIT A**

examples of improperly withheld documents as privileged warrant in camera review of every withheld document listed on the privilege log.

The Court has upheld the specifically challenged privilege and work product claims, and Jolivet offers no explanation why she believes that every document or communication is not privileged or protected and does not persuade the Court that Defendant has not adequately supported the privilege or work product claims as to every withheld document or communication. And Defendant's now producing the one email chain, with redactions, after originally withholding it entirely does not change this conclusion. *Accord TPI Cloud Hosting, Inc. v. Keller Williams Realty, Inc.*, No. 1:19-CV-0808 JRN, 2020 WL 1150695, at *3 (W.D. Tex. Mar. 9, 2020) ("Regardless, TPI's conclusion that, assuming the sentence was improperly redacted, every single one of the 75 documents Keller Williams has logged as privileged is now suspect, is baseless. The attorney-client privilege is an important doctrine that is not so easily undermined. It is fundamental to the U.S. legal system. Even if the Court agreed with TPI that the sentence in the email had been improperly redacted, it would not justify the Court ordering Keller Williams to turn over to TPI 75 additional documents Keller Williams has asserted are privileged. Nor would it justify the Court reviewing each of these documents in camera. The in camera review of documents is an extraordinary action, reserved for situations when there is no other means by which the Court can reach a decision on an issue. Here, TPI has failed to provide any justifiable reason to question wholesale Keller

-44-

**EXHIBIT A**

Williams' assertion of privilege. Before the Court will order the production of documents for in camera review, TPI must make an individualized showing that there is reason to believe a particular document claimed to be privileged in fact is not. There is presently no basis to question the documents Keller Williams has claimed as privileged, and the motion to compel on this basis is denied.").

## Conclusion

For the reasons explained above, the Court DENIES Plaintiff Michelle Jolivet's Motion to Compel and Request for In Camera Review of Documents on Privilege Log [Dkt. No. 77] and Supplemental Motion to Compel and Request for In Camera Review of Documents on Privilege Log [Dkt. No. 86].

Finally, although this Memorandum Opinion and Order may not contain any confidential information, the Court will, out of an abundance of caution, conditionally enter it under seal because the underlying motion papers quoted above were filed under seal. And the parties are ORDERED to file a joint status report by **September 21, 2021** that (1) sets forth their views on whether this Memorandum Opinion and Order contain any confidential information – and, if so, where – and should therefore remain sealed and (2), if at least one party asserts that this Memorandum Opinion and Order should remain sealed, attaches for the Court's consideration a proposed public version of the Memorandum Opinion and Order with any and all assertedly confidential information redacted.

SO ORDERED.

-45-

**EXHIBIT A**

DATED: September 14, 2021

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

**EXHIBIT A**