UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MICHELLE JOLIVET,                    §
                                     §
         Plaintiff,                  §
                                     §
v.                                   §     CIVIL ACTION NO. 3:19-CV-2096-B
                                     §
COMPASS GROUP USA, INC.,             §
                                     §
         Defendant.                  §

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Compass Group USA's Motion for Summary Judgment (Doc. 73). For the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion.

## I.

## BACKGROUND[1]

This is an employment discrimination and retaliation case. Plaintiff Michelle Jolivet ("Jolivet") claims that her former employer, Compass Group USA ("Compass"), discriminated against her because of her sex by paying her less than it paid her male colleagues, holding her to unequal performance standards, denying her opportunities for hiring and promotion, and ultimately retaliating against her when she complained about the alleged discrimination. Doc. 47, Am. Compl.

---

[1] The Court draws its factual account from the summary-judgment record and the referenced exhibits. For the sake of brevity, the Court summarizes only those factual allegations raised by the parties' briefing and pertinent to the Court's analysis. When citing to Doc. 73, Def.'s Br., as well as to other documents in the record, the Court refers to the page numbers generated by the Court's electronic filing system.

Compass is a national food service management and support services company. Doc. 73, Def.'s Br., 8. It is organized into multiple "sectors" that provide contract food service for different types of businesses. *Id*. Sectors relevant to this action include Eurest (business and industry), Wolfgang Puck Catering ("WPC") (catering and events), and Chartwells (education). Doc. 84, Pl.'s Resp., 6. Within the Eurest sector, the National Accounts division serves Fortune 100 companies with multiple national or international locations ("sites"). Doc. 73, Def.'s Br., 8. Each company negotiates a contract for its "account" with Compass, including the sites to be served and the leadership and staffing structure for the account. *Id*. Generally, the leadership structure on a national account is as follows (from highest level to lowest): President of National Accounts (overseeing all national accounts), Executive Vice President (if needed); Senior Vice President ("SVP"), Regional Vice President ("RVP"), Vice President ("VP"), Regional Director ("RD"), and District Manager ("DM"). *Id*. The positions vary in the number of sites, geographic areas, and volume of business managed, among other requirements. *Id*. Compass positions are classified into numerical "Hay Grades," which are salary ranges for the position and consider the cost of living for the position's location. *Id*.

Jolivet joined Compass as a DM in the Eurest sector National Accounts division in 2010. Doc. 84, Pl.'s Resp., 7. In October 2015, she applied for a VP position on the Intel account and was hired for the position, which was reclassified as an RD position before she accepted it. *Id*. at 8. She began the RD position in December 2015 or January 2016. *See id*. Marc Wincott ("Wincott") filled her former DM position in the summer of 2016. *Id*. at 28; Doc. 73, Def.'s Br., 10. In May 2016, Jolivet transferred into a temporary Regional Wellness Director ("RWD") position on the Bank of America contract. Doc. 73, Def.'s Br., 11 . The Intel RD and Bank of America RWD positions were

classified at "Hay Grade 18." Doc. 84, Pl.'s Resp., 9. At the end of her time in the RWD position, she was paid an annualized salary of $120,000. *Id.* at 10. Jolivet received positive performance reviews up to this point. *Id.* at 13.

In January 2017, after the RWD position ended, Jolivet accepted a Texas-based DM position on the IBM and Verizon account. Doc. 73, Def.'s Br., 11, 54. After a negotiation in which she complained that the salary she was originally offered for this DM position was less than that being paid to three male DMs (Wincott, Jose Munoz ("Munoz"), and Patrick Boylan ("Boylan")), she began the position at an annualized salary of $115,000 (Hay Grade 17). Doc. 84, Pl.'s Resp., 10.

The parties' accounts diverge when describing Jolivet's performance in the IBM and Verizon account DM position. Jolivet states that after she began complaining about being paid less than her male colleagues to supervisors, including Verizon SVP Dennis Weinerman ("Weinerman") in early 2017, she was denied the opportunity to interview for a vacant RD position on the Verizon account. *Id.* at 12. Instead, Ray Pingree ("Pingree") was promoted into the unposted position. *Id.* Jolivet states that she continued to complain about unequal pay and treatment and that because of this she received a negative annual performance review for the first time in her employment with Compass. *Id.* at 13; Doc. 83-14, Pl.'s Ex. 14, 2017 Performance Review. This review was conducted by Weinerman and Pingree. Doc. 84, Pl.'s Resp., 13. Compass agrees that Jolivet's 2017 Performance Review identified areas that needed improvement, but denies that this was the result of her complaints about unfair treatment on the basis of sex. *See* Doc. 73, Def.'s Br., 13. Instead, Compass states that Jolivet found the workload unmanageable and that her sites suffered from quality deficiencies, high turnover, and defalcations. *Id.* Jolivet states that male DMs experienced the same

issues but that only she was assessed negatively because of them. Doc. 84, Pl.'s Resp., 18.

Sometime before June 7, 2018, Pingree had a conversation with Jolivet about the need to put her on a Performance Improvement Plan ("PIP"). *See* Doc. 83-18, Pl.'s Ex. 18, 6. On June 7, 2018, after this conversation, Jolivet emailed Pingree that she had decided to talk to an employment lawyer about the PIP or a potential severance option. *Id.* She was placed on the PIP later in June 2018. Doc. 83, Pl.'s Resp., 14. She completed the PIP but was issued a Final Counseling Record ("FCR") in August 2018. *Id.* at 17. When the FCR was issued, Jolivet intensified her complaints about unequal treatment, now specifically framing them as sex discrimination complaints. *See* Doc. 73, Def.'s Br., 16; Doc. 74, Def.'s App., 125.

In September 2018, Jolivet complained to Diane Carr ("Carr"), in Human Resources, that Weinerman had hugged her and other female employees. Doc. 84, Def.'s Br., 19. Carr met with Weinerman and in November 2018 spoke at Weinerman's employee team meeting to remind employees about proper greetings, giving hugging as an example of an improper greeting. Doc. 73, Def.'s Br., 33.

In December 2018, Jolivet was told she would not receive a 2018 bonus. Doc. 84, Pl.'s Resp., 19. On December 14, 2018, Jolivet filed a sex discrimination charge with the EEOC. *Id.* In January 2019 she was notified that her position (based in Texas) was being eliminated due to a reorganization of the Verizon account. *Id.* at 20. Its responsibilities would be subsumed into two new positions, RD-East Coast (based in New Jersey) and RD-West Coast (based in California). Doc. 73, Def.'s Br., 19. Jolivet applied to and interviewed for the positions, expressing her willingness to relocate. Doc. 84, Pl.'s Resp., 20–21. The interview panel consisted of Pingree, Weinerman, and Carr, all of whom had

been involved in or the subjects of Jolivet's protected complaints. *Id*. at 22.

Jolivet and Boylan were the only two internal candidates for the RD-East and RD-West positions. *See id*. Boylan, who was already based in New Jersey, was selected to fill the RD-East position. *Id*. at 21–22. Jolivet was also rejected for the RD-West position, which Compass eventually filled with an external candidate. *Id*.

In early 2019, Jolivet applied to and was eventually hired for a Texas-based RD position with Compass' WPC sector, East Division. Doc. 73, Def.'s Br., 20. She started that position in May 2019. *Id*.

In September 2019, Jolivet received her right to sue letter from the EEOC and filed this lawsuit, alleging Title VII sex discrimination, Title VII retaliation, and Equal Pay Act ("EPA") claims based on her Eurest sector employment. Doc. 84, Pl.'s Resp., 22.

In 2020, due to the Covid-19 pandemic and a precipitous decline in business, WPC eliminated many positions, including Jolivet's. Doc. 73, Def.'s Br., 20–21. Jolivet was notified of her position's elimination on October 27, 2020, the day on which discovery in this lawsuit was scheduled to close. Doc. 47, Am. Compl., ¶ 77. Jolivet's separation and severance agreement included a release of claims against Compass, which she refused to sign. *Id*. at ¶ 81.

In December 2020, Jolivet applied for a DM position with Compass's Chartwells sector. Doc. 84, Pl.'s Resp., 23. She was offered the position on January 19, 2021. *Id*. As a condition of her employment, Chartwells required her to sign an Employment Agreement, which included a release of claims against Compass. *Id*. Jolivet asked repeatedly that the release clause be stricken from the agreement, but Chartwells refused. *Id*. at 23–24.

On January 21, 2021, Jolivet filed the operative Complaint in this lawsuit, claiming retaliation based on the WPC position elimination in addition to the Eurest claims. Doc. 47, Am. Compl, ¶¶ 74–83.

On January 28, 2021, Chartwells rescinded Jolivet's employment offer, stating that her start date was in one week and she had refused to sign the required agreement. Doc. 93, Def.'s Reply, 10. On July 28, 2021, Jolivet filed a charge with the EEOC against Compass and Chartwells, claiming unlawful retaliation based on the rescinded job offer. *Id.*

Compass has moved for summary judgment on Jolivet's EPA and Title VII retaliation and discrimination claims. The motion is fully briefed and ripe for review. The Court considers it below.

## II.

## LEGAL STANDARDS

A.    *Federal Rule of Civil Procedure 56(a)*

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary-judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab'ys*, 919 F.2d 301, 303 (5th Cir. 1990). Usually, this requires the movant to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)

(quotation marks omitted).

Once the summary-judgment movant has met this burden, the burden shifts to the non-movant to "go beyond the pleadings and designate specific facts showing that" a genuine issue exists. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (citations omitted). Instead, the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

"[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary[-]judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations incorporated) (quotations marks omitted). But the Court need not "sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). If the non-movant is unable to make the required showing, the Court must grant summary judgment. *Little*, 37 F.3d at 1076.

B.   *Equal Pay Act*

Under the EPA, an employer may not discriminate "between employees on the basis of sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1); *Siler-Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio*, 261 F.3d 542, 546 (5th Cir. 2001).

An EPA plaintiff must first prove a prima facie case of discrimination by showing that: "(1)

[the] employer is subject to the [EPA]; (2) the employee performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than the employee of the opposite sex providing the basis of comparison." *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993); *see also Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). Once an EPA plaintiff proves her prima facie case, the burden of proof switches to the employer to prove that the pay difference is the result of one of the four statutory exceptions to the EPA: "(1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex." *Siler-Khodr*, 261 F.3d at 546; *see also Corning*, 417 U.S. at 196.

C.     *Title VII*

Title VII makes it unlawful for employers to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race [or] sex." 42 U.S.C. § 2000e-2(a)(1). Under the *McDonnell Douglas* burden-shifting framework employed in such cases, a plaintiff relying on circumstantial evidence to claim discriminatory treatment must first establish a prima facie case of discrimination, based on an "adverse employment action." *See Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 362–63 (5th Cir. 2013) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973)); *Jones v. City of Dallas*, 2018 WL 2417853, at *3 (N.D. Tex. May 29, 2018). In a failure–to–hire case, the plaintiff satisfies this burden by showing that: "(1) she is a member of the protected class; (2) she sought and was qualified for a position for which applicants were being sought; (3) she was rejected for the position; [and] (4) the employer hired a person outside of the plaintiff's protected class or continued

to seek applicants with the plaintiff's qualifications." *Jones*, 2018 WL 2417853, at *3 (alteration in original) (quoting *McMullin v. Miss. Dep't of Pub. Safety*, 782 F.3d 251, 258 (5th Cir. 2015)).

Title VII further makes it unlawful for an employer to retaliate against an employee for opposing any unlawful discrimination. *See* 42 U.S.C. § 2000e-3(a). In Title VII retaliation cases, the plaintiff must first make the following prima facie showing: "(1) that [she] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002). As to the third prong, "[T]he plaintiff 'need not prove that her protected activity was the sole factor motivating the employer's challenged decision in order to establish the 'causal link' element.'" *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (cleaned up) (quoting *Long*, 88 F.3d at 305 n.4). However, "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action" will not suffice "as sufficient evidence of causality to establish a prima facie case" unless the temporal proximity is "very close." *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

If the plaintiff establishes a prima facie case, the burden shifts to the employer to put forth "a legitimate, non-discriminatory reason for [its] action." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 306 (5th Cir. 2020) (applying the *McDonnell Douglas* framework to an ADA retaliation claim); *McMullin*, 782 F.3d at 258 (applying same to a Title VII discrimination claim). If the employer does so, the presumption of discrimination disappears, and in order to survive summary judgment the plaintiff must offer sufficient evidence to create a genuine issue of material fact that the proffered reason is pretextual. *Lyons*, 964 F.3d at 306; *McMullin*, 782 F.3d at 258.

# III.

# ANALYSIS

Compass moves for summary judgment on the grounds that: (1) Some of Jolivet's claims under Title VII and the EPA are time-barred; (2) Jolivet has failed to establish a prima facie case for any claim under the EPA or Title VII; (3) Compass has proffered a legitimate, nondiscriminatory reason for any unequal treatment or adverse employment action regarding which Jolivet has made a prima facie case; and (4) Jolivet has failed to establish that Compass's reason for any unequal treatment or adverse employment action was pretext for unlawful retaliation. Doc. 73, Def.'s Br., 23–56. Jolivet, on the other hand, contends that she has established: (1) a prima facie case under the EPA, (2) a prima facie case for discrimination and/or retaliation under Title VII as to each non-time-barred event, and (3) that she has established pretext. Doc. 84, Pl.'s Resp., 25–55.

For the following reasons, Compass's motion for summary judgment is granted in part and denied in part, as indicated below.

A.   *The Court Grants In Part and Denies In Part Summary Judgment for Compass on Jolivet's Equal Pay Act Claims.*

An EPA action "must be commenced within two years of its accrual, or within three years if the violation is willful." *Lenihan v. Boeing Co.*, 994 F. Supp. 776, 796 (S.D. Tex. 1998). Jolivet filed this lawsuit on September 4, 2019, so claims dating back to September 4, 2016, are covered under the three-year statute of limitations, while only those dating back to September 4, 2017, are covered under the two-year statute of limitations. *See* Doc. 1, Original Compl. Therefore, the potentially relevant positions under the longer statutory timeframe are those extending from September 4, 2016, through the end of her tenure with Eurest: (1) the Bank of America RWD position she held from

May 2016 to January 2017, and (2) the IBM and Verizon DM position she held from January 2017 to January 2019.[2]

To establish a prima facie case under the EPA, Jolivet must show: "(1) [Compass] is subject to the [EPA]; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than the [comparator-employee] of the opposite sex." *See Chance*, 984 F.2d at 153. The comparator's work must be "substantially equal," not identical. *Jones v. Flagship Int'l*, 793 F.2d 714, 723 (5th Cir. 1986); *Lenihan*, 994 F. Supp. at 799 (citing 29 U.S.C. § 255(a)).

Compass does not dispute that it is subject to the EPA. *See* Doc. 73, Def.'s Br., 51. Compass states that Jolivet cannot establish the second and third prongs of her prima facie case because she cannot show that her position was sufficiently like any male comparator's, or that she was paid less than a male comparator for equal work. *Id*. Compass states that in the Eurest sector, "even when a job title is the same, each client is different, meaning that the effort and responsibilities for each role are different." *Id*. at 9.

Below, the Court first finds that Jolivet has not established a prima facie case under the EPA for any violation related to the Bank of America RWD position. Her remaining EPA claim is for the IBM and Verizon DM position. As Jolivet held the DM position from January 2017 to January 2019, the EPA claim related to this position is within the two year time limit for a non-willful violation. Therefore, the Court need not decide the issue of whether any EPA violation was willful.

---

[2] Jolivet has testified that her pay discrimination claims are limited to her tenure with Eurest. Doc. 73, Def.'s Br., 51 n.4 (citing Doc. 74, Def.'s App., 14).

Second, the Court finds that Jolivet has established a prima facie case under the EPA for the DM position, based on comparator Boylan, who worked in the same role, for the same client, at the same time. Compass has also met its burden of showing "any other factor other than sex" on which the pay differential was based. A reasonable jury could decide, based on the facts in evidence, that either party has proved its case by the preponderance of the evidence. Accordingly, a genuine issue of material fact exists as to whether Compass violated the EPA by paying Jolivet less than comparator Boylan. The Court therefore **DENIES** summary judgment on Jolivet's EPA claim as to comparator Boylan.

As to Munoz and Wincott, the Court finds that Jolivet fails to establish a prima facie case under the EPA, for the reasons given below. The Court therefore **GRANTS** summary judgment for Compass on EPA claims based on comparators other than Boylan, including Munoz and Wincott.[3]

1.      The Bank of America RWD Position

Jolivet does not point to specific admissible evidence regarding any male comparator who worked in a RWD or other position requiring equal skill, effort, and responsibility under similar working conditions, for which work she was paid less. *See* Doc. 84, Pl.'s Resp., 26-27 (limiting comparison to DMs Boylan, Wincott, and Munoz). The Court accordingly **GRANTS** summary

---

[3] Jolivet's Amended Complaint lists comparators Brian Soderquist, Charles Farigone, Sean Sellaro, David Schade, and John Liotti, in addition to Boylan, Munoz, and Wincott. Doc. 47, Am. Compl., ¶¶ 32–34. However, Jolivet's Response points out evidence to show that she was paid less than Boylan, Munoz, and Wincott only. The Court therefore limits its EPA analysis to only the Boylan, Munoz, and Wincott comparators and deems the others waived. *See Ragas*, 136 F.3d at 458 (The Court need not "sift through the record in search of evidence to support a party's opposition to summary judgment."); *Criner v. Texas–New Mexico Power Co.*, 470 F. App'x 364, 368 (5th Cir. 2012) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived." quoting *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002)).

judgment for Compass for any EPA claim based on the RWD position.

       2.     The IBM and Verizon DM Position

       i.     *Boylan*

Jolivet states that she was paid less than Boylan, a male DM employed on the same Verizon contract at the same times she was. Doc. 84, Pl.'s Resp., 27–28.

To make out her prima facie case, Jolivet must show that she and Boylan worked in positions requiring equal skill, effort, and responsibility under similar working conditions, for which work she was paid less. *See Chance*, 984 F.2d at 153. Here, Jolivet has shown that she and Boylan performed substantially equal work. Boylan and Jolivet had identical job titles and pay grades, worked on the same account, shared the same supervisors, traveled, and engaged in similar job functions, including client retention, catering sales growth, and management of multiple sites. *Id.* at 30–32. Each was assigned to manage "high-volume locations" on the Verizon account. *Id.* at 32. Jolivet has also shown that she was paid less than Boylan for this work. *Id.* at 28. A reasonable jury could find, based on this evidence, that Jolivet has established a prima facie case under the EPA as to Boylan.

The burden now shifts to Compass to show that the differential in pay is the result of a statutory exception to the EPA. *Siler-Khodr*, 261 F.3d at 546. The Court finds that Compass has introduced sufficient evidence that Boylan was paid more because (1) he lived in New Jersey, which has a higher cost of living than Texas, (2) he had longer tenure with Compass than did Jolivet, (3) he managed sites with a higher volume of sales than did she, and (4) he performed better in the role than did she. Doc. 73, Def.'s Br., 54–55. Based on this evidence, a reasonable jury could find that Compass has met its burden to show it did not violate the EPA. *See Lenihan*, 994 F. Supp. at 801

(finding that a company's evidence showing that legitimate factors were responsible for the pay disparity created a fact issue).

However, Jolivet has also presented evidence that DMs on national accounts traveled regularly, such that a DM's geographic location might not be relevant in determining pay, and that the size and requirements of each DM's sites changed frequently. Doc. 84, Pl.'s Resp., 28–29, 33; *c.f. Siler-Khodr*, 261 F.3d at 548 (finding that grant-obtaining abilities did not establish a statutory exception where an employee had not been informed that such abilities were a factor in compensation and the employer had not previously considered such abilities in setting compensation). Furthermore, Boylan testified that his pay did not vary according to how many sites he supervised or managed. Doc. 84, Pl.'s Resp., at 33. Based on such evidence, a reasonable jury could conclude that Compass's explanations were pretextual. *See Siler-Khodr*, 261 F.3d at 548.

For the reasons above, the Court finds that there is a genuine issue of material fact as to whether Compass violated the EPA by paying Jolivet less than Boylan. Therefore, the Court **DENIES** summary judgment on this claim.

> ii. *Munoz*

Jolivet states that Munoz's position was comparable to hers and that he had less experience than she did but was paid "much more" than she was when each began as DMs. Doc. 84, Pl.'s Resp., 28. Munoz was employed as a Resident District Manager (RDM), a different position than Jolivet's with the same Hay Grade. Doc. 73, Def.'s Br., 51. "While position titles and descriptions are not dispositive, they may still be considered in making an "equal work" determination. *See Leykum v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 2020 WL 10355876, at *4 (W.D. Tex. Oct. 26, 2020).

-14-

Munoz worked on a different account than did Jolivet. Doc. 73, Def.'s Br., 54. Moreover, Jolivet has only pointed out one instance of a time at which Munoz's pay exceeded hers—some portion of 2016 beginning in March 2016. Doc. 84, Pl.'s Resp., 28.

For these reasons, the Court finds that Jolivet has not established a prima facie case under the EPA as to comparator Munoz.

### iii. Wincott

Jolivet states that Wincott received a higher salary than she did for work in the same DM position with the same client contract. *Id*. at 27. This, she says, establishes a prima facia case under the EPA. The Court disagrees. Jolivet's evidence does not show that Wincott received a higher salary for the same work, in the same position, *at a relevant time*. Jolivet held the position from 2012 to 2016. *Id*. Wincott took over the position in 2016 and held it until 2018. *Id*. When the subsequent holder of a position (a woman) is paid less than the prior immediate (male) holder of the same position, that may establish a prima facie case for discrimination. *Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 467 (5th Cir. 2021). Under the facts in this case, the reverse is not true. Jolivet received regular annual raises over the time she held the position. Doc. 84, Pl.'s Resp., 27. Wincott was hired into the position at salary that was reasonably consistent with Jolivet's most recent annual raise. *Id*. The pay trajectory for this position, therefore, was relatively consistent between Jolivet and Wincott. *See id.* For these reasons, the Court finds that Jolivet has not established a prima facie case under the EPA as to comparator Wincott.

Accordingly, the Court **DENIES** summary judgment on Jolivet's EPA claim regarding comparator Boylan and **GRANTS** summary judgment for Compass as to all other EPA claims.

-15-

B.   *The Court Grants Summary Judgment for Compass on Jolivet's Title VII Claims Based On Acts Occurring Before February 16, 2018.*

Compass first argues that Jolivet is time-barred from asserting claims under Title VII based on events occurring more than 300 days before Jolivet filed her EEOC charge. Doc. 73, Def.'s Br., 17. Jolivet argues that Compass's discrimination was a continuing act, or alternatively notes that time-barred events may be considered as evidence for timely claims. Doc. 84, Pl.'s Resp., 25.

To support a claim for relief under Title VII, a plaintiff must file a charge of discrimination within 300 days of the alleged discriminatory action. 42 U.S.C. § 2000e-5(e); *Tillison v. Trinity Valley Elec. Co-op., Inc.*, 204 F. App'x 346, 348 (5th Cir. 2006). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire . . . . [e]ach constitute[] a separate actionable 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 110, 114 (2002). Claims based on acts occurring before the 300-day window are time barred and "not actionable . . . even when they are related to acts alleged in timely filed charges." *Id.* at 113. "The existence of past [time-barred] acts," however, may be offered "as background evidence in support of a timely claim." *Id.*

Jolivet filed her charge of discrimination on December 14, 2018. Doc. 84, Pl.'s Resp., 19. She is thus barred from complaining about any actions that occurred prior to February 16, 2018, 300 days before December 14, 2018. Accordingly, the Court finds that any of Jolivet's Title VII claims arising out of actions occurring before February 16, 2018 are untimely.

C.   *The Court Considers Jolivet's Title VII Claims Regarding Each Non-Time-Barred Event.*

Jolivet asserts various discrimination and/or retaliation claims based on the following events occurring after February 16, 2018.

-16-

She asserts two adverse employment events related to sex discrimination: (1) her placement on a PIP in June 2018; and (2) denial of a bonus in December 2018. Doc. 84, Pl.'s Resp., 37.[4]

She asserts eight adverse employment events related to retaliation for her protected conduct: (1) her placement on a PIP in June 2018; (2) her placement on final counseling via the FCR in August 2018; (3) denial of a 2018 bonus in December 2018; (4) elimination and termination of her job in early 2019; (5) failure to hire her for the RD-East position in January 2019; (6) failure to hire her for the RD-West position in April 2019; (7) termination from WPC in October 2020; and (8) rescission of her job offer after she refused to sign the release of claims in January 2021. *Id.* at 39–40. Jolivet claims that there was a causal connection between each of these events and her protected activities. *Id.* at 41.

The court considers each event below.

1.  The Court Grants Summary Judgment for Compass on Jolivet's PIP-based Discrimination and Retaliation Claims.

Jolivet claims that her placement on a PIP in June 2018 was an adverse employment action because it prevented her from interviewing for other positions within Compass and was a factor in the denial of her 2018 bonus. *Id.* at 40. She further states that she was placed on the PIP when male colleagues with similar performance were not, and in retaliation for protected activities. *See id.* at 42. Compass states that the PIP was not an adverse employment action but a growth plan to help Jolivet

---

[4] Jolivet also asserts that she was "denied the opportunity to apply and interview for job promotions" and "was demoted from her position as Regional Director to a District Manager." Doc. 84, Pl.'s Resp., 37, 40. However, the alleged demotion from RD to DM occurred before February 16, 2008, and is time barred. Nor has Jolivet shown that she applied to any jobs after February 16, 2018 for which she was not allowed to interview. Her evidence shows that she applied for and was interviewed for the RD-East, RD-West, WPC RD, and Chartwells positions after this date. *See generally* Doc. 84, Pl.'s Resp.

improve her performance, and that it was not issued in response to protected activity but because of performance deficiencies. Doc. 73, Def.'s Br., 31–32.

Below, the Court first explains the Fifth Circuit's dual definition of "adverse employment action," which establishes different requirements for discrimination and retaliation claims. Then, applying these standards, the Court concludes that the PIP is not an adverse employment event that can support a Title VII discrimination claim. Therefore, the Court grants summary judgment as to the PIP-based discrimination claim. Next, the Court concludes that the PIP placement is an adverse employment event for the retaliation claim, but that Jolivet has not established a prima facie case that she was placed on the PIP in retaliation for her protected activities. Therefore, the Court grants summary judgment as to the PIP-based retaliation claim.

### i. The Fifth Circuit's dual adverse employment event standards

As the Supreme Court has explained, "Title VII's substantive provision and its antiretaliation provision are not coterminous." *Burlington N. & Santa Fe Ry. v. White* (*BNSF*), 548 U.S. 53, 67 (2006). The scope of the retaliation provision is broader than the substantive antidiscrimination provisions, such that a wider range of employer actions will support an employee's retaliation claims than will support an employee's discrimination claims. *Id.* Under this dual-standard approach, the Fifth Circuit holds that the adverse employment action required as an element of plaintiff's prima facie case for discrimination under Title VII must be an "ultimate employment decision." *Mitchell v. Snow*, 326 F. App'x 852, 855 (5th Cir. 2009) (explaining the dual standard for actionable adverse action requirements under Title VII). These include "hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). By contrast, a prima facie case in a Title VII retaliation claim requires "a plaintiff [to] show that a reasonable

employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *BNSF*, 548 U.S. at 68 (cleaned up). The "materially adverse" standard is objective and intended to "separate significant from trivial harms." *Id.* It must also be considered in the context of the act's likely and intended effect on the worker whose complaints it was ostensibly intended to chill. *Id.* at 69; *Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 707 (5th Cir. 2016) (reiterating that "context is critical" in making this determination).

<blockquote>a. The PIP-based discrimination claim fails for lack of an ultimate employment decision.</blockquote>

Fifth Circuit precedent establishes that placing an employee on a PIP is generally not an ultimate employment decision. *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019), *cert. denied*, 141 S. Ct. 160 (2020) (finding that an employee's placement on a PIP "growth plan" was not an adverse employment action). Some courts have suggested, however, this result might be different where the employee "was demoted or received reduced compensation due to the PIP." *Turner v. Novartis Pharms. Corp.*, 442 F. App'x 139, 140–41 (5th Cir. 2011); *see also Obondi v. UT Sw. Med. Ctr.*, 2017 WL 2729965, at *14 (N.D. Tex. June 23, 2017) (holding that a low performance evaluation alone was not an adverse employment action, but *might* be if coupled with tangible effects like denial of a bonus).

Here, Jolivet does not claim that the PIP functioned as a demotion. *See* Doc. 84, Pl.'s Resp., 14–17. Further, the Court finds that Jolivet did not "receive reduced compensation" based on the PIP. Jolivet states that in December 2018 she was denied her bonus "due to the fact that [she] was on a PIP earlier in the year." *Id.* at 40. But as the Fifth Circuit has explained, even if the bonus denial

itself was an ultimate employment decision and the PIP placement eventually led to that decision, "'interlocutory or mediate' decisions" potentially leading to that later consequence are not themselves ultimate employment decisions. *Belcher v. Roche*, 72 F. App'x 37, 38 (5th Cir. 2003)(citing *Watts v. Kroger Co.*, 170 F.3d 505, 511–12 (5th Cir. 1999)).

For these reasons, the Court finds that Jolivet has not made out a prima facie case for discrimination based on the PIP because the PIP was not an adverse employment act.

b.      The PIP-based retaliation claim fails for lack of causation.

Under the more expansive "materially adverse" standard used in retaliation claims, the PIP *might* qualify as an adverse employment event because of its connection to the bonus denial. *See Risinger v. BASF, Inc.*, 2007 WL 9725084, at *10 (E.D. Tex. Sept. 24, 2007); *Turner*, 442 F. App'x at 140–41; *Obondi,* 2017 WL 2729965, at *14. However, the Court need not decide this issue, as Jolivet has not established a genuine issue of material fact regarding the causation element.

To establish the causation element of a prima facie case for retaliation, Jolivet must show that her protected complaints were a cause of the adverse action. *Long*, 88 F.3d at 305 n.4. A showing of mere temporal proximity between an employer's knowledge of protected activity and the action will not suffice unless the temporal proximity is "very close." *Breeden*, 532 U.S. at 273.

Here, Jolivet informed Pingree by email on June 7, 2018, that she had contacted an employment lawyer. Doc. 83-18, Pl.'s Ex. 18, 6. Beginning on July 16, 2018, Jolivet claimed she was being "treated differently." Doc. 73, Def.'s Br., 15 (citing Doc. 74, Def.'s App., 54, 212–20). She did not state that her concern was based on a protected status—sex—at this time. *Id.* It was not until August 24, 2018, in response to the FCR, that she made specific complaints alleging sex discrimination. *See* Doc. 84, Pl.'s Resp., 42. But protected complaints made after the PIP cannot have

caused the PIP. Jolivet's June 7 email states that she was responding to an earlier conversation in which Pingree told her she would have a choice between a PIP or severance. *See* Doc. 83-18, Pl.'s Ex. 18, 6. And while Jolivet testified that she spoke with supervisors about her concern that she was being denied opportunities to interview on account of her sex, her testimony does not establish that any such complaints were made "very close" to the June 2018 PIP placement. *See*, *e.g.*, Doc. 83-1, Pl.'s Ex. 1, Jolivet Depo., 81–83, 102.

For these reasons, the Court finds that Jolivet has not made out a prima facie case for retaliation based on the PIP, as there is insufficient evidence to show her protected complaints began before Compass initiated the PIP process. The Court **GRANTS** Compass's motion for summary judgment on all claims related to the PIP.

2.   The Court Grants Summary Judgment for Compass on the FCR-based Retaliation Claims.

Jolivet states that her placement on final counseling in August 2018 was an adverse employment event that was done in retaliation for her complaints of sex discrimination.[5] Doc. 84, Pl.'s Resp., 40. Because of the FCR placement, she "automatically" became ineligible to receive all or part of her bonus for that year, she states. *Id.*

Like the PIP, the FCR *could* be a materially adverse event in this context because a reasonable employee might well be dissuaded from making or supporting a charge of discrimination when faced with loss of a substantial bonus. *See Risinger*, 2007 WL 9725084, at *10. However, like

---

[5] Jolivet's Response does not assert that the FCR was a discriminatory adverse employment decision. *See* Doc. 84, Pl.'s Resp., 37, 40 (listing FCR under the retaliation cause of action but not the sex discrimination cause of action). Therefore, the Court finds that Jolivet has waived any discrimination claim with regard to the FCR. *Criner*, 470 F. App'x at 368.

the PIP, Jolivet has not presented sufficient evidence to establish a genuine issue of material fact about the causal relationship between her protected complaints and her placement on the FCR. As discussed above, Jolivet's specific evidence of protected activity begins with her response to the FCR, in which she stated her concern that she was being treated differently than her male peers. Doc. 84, Pl.'s Resp., 42. A communication made in response to the FCR cannot have caused the FCR. And the evidence regarding Jolivet's complaints before the FCR was issued does not raise a genuine issue of material fact regarding retaliation. She told her supervisor that she had spoken with an employment lawyer in response to a threatened PIP or severance option and stated that she felt she was being treated differently than other managers, but she did not state a protected ground for her complaint. *See* Doc. 83-18, 6; Doc. 73, Def.'s Br., 15 (citing Doc. 74, Def.'s App., 54, 212–20).

Therefore, the Court finds that Jolivet has not made out a prima facie case for retaliation based on the FCR. The Court **GRANTS** Compass's motion for summary judgment on all claims related to the FCR.

> **3.**   The Court Grants Summary Judgment for Compass Regarding the Bonus-Based Discrimination and Retaliation Claims.

Jolivet lodged written complaints with Compass HR and various Compass executives on August 24, August 27, September 12, and November 7, 2021. Doc. 83-11, Pl.'s Ex. 11, at 10–17. She also filed an EEOC charge on December 14, 2021. Doc. 84, Pl.'s Resp., 43.[6] In December 2018, Jolivet was informed that she would not be receiving her 2018 bonus. *Id.* at 41. Jolivet claims that the bonus was denied in retaliation for her complaints about sex discrimination and that the denial

---

[6] Compass does not dispute that these were protected activities. *See* Doc. 73, Def.'s Br., 39–40.

was a discriminatory act. *Id*. at 40.

The Fifth Circuit has not addressed whether denial of a bonus is an ultimate employment decision, but some courts within the circuit have suggested it is generally not. *See, e.g., Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 885 (S.D. Tex. 2010) ("As a matter of law, even being totally denied a performance award is not a ultimate employment decision."); *Hackney v. Tex. Dep't of Crim. Just.*, 2009 WL 2391232, at *8 (E.D. Tex. Aug. 4, 2009) (finding that the denial of a performance award was not an ultimate employment decision); *Rosales v. TXI Ops.*, LP, 2005 WL 598195, at *5 (N.D. Tex. Mar. 14, 2005) (finding that receiving a lower bonus than other employees was not an ultimate employment decision); *Daniel v. Universal Ensco, Inc.*, 2011 WL 13140729, at *10 (S.D. Tex. Aug. 31, 2011), *aff'd*, 507 F. App'x 434 (5th Cir. 2013) (finding that a $12,000 reduction in bonus was not an ultimate employment decision). *But see Lacher v. West*, 147 F. Supp. 2d 538, 542 (N.D. Tex. 2001) (discussing bonus-denial-based age discrimination claim and dismissing the claim for failure to prove another element of the claim); *Williams v. J.B. Parks Wholesale Florist, Inc.*, 1997 WL 160194, at *5 (N.D. Tex. Mar. 31, 1997) (finding that employer's confiscation of a $50 cash bonus given to an employee by a client caused an "immediate reduction in her income" and was therefore an ultimate employment decision that reduced her compensation).

Here, Jolivet acknowledges that the bonus was not part of her base pay and was not guaranteed. *See* Doc. 83-1, Pl.'s Ex. 1, Jolivet Depo., 94 (stating that "you never count on bonus because you just don't know"). Denial of a bonus under these circumstances is not a reduction in compensation. *See Zieche v. Burlington Res. Inc. Emp. Change In Control Severance Plan*, 506 F. App'x 320, 325 (5th Cir. 2013) (finding that denial of bonus was not a reduction in compensation giving good cause for employee's resignation). It reduces *potential* compensation, but does not reduce the

compensation to which an employee is entitled. *See id*. For this reason, the Court finds that the denial of Jolivet's bonus was not an ultimate employment decision, because it was not a reduction in compensation. *See id.*

Denial of a bonus under these circumstances *could* be a materially adverse event satisfying the retaliation standard because a reasonable employee might well be dissuaded from lodging a complaint where such a loss was threatened. *See Risinger,* 2007 WL 9725084, at *10; *Turner*, 442 F. App'x at 140–41. For the retaliation claim, however, Jolivet has not made out a prima facie case for the element of causation. As with the PIP and FCR events, the timing of Jolivet's protected complaints is key. Jolivet states that the denial of all or part of the 2018 bonus was triggered by her placement on final counseling. Doc. 84, Pl.'s Resp., 40–41. As discussed above, because her specific complaints regarding disparate treatment on the basis of sex began on August 24, 2018, upon receipt of the FCR, Jolivet has not established a genuine issue of material fact about the fact that her later protected complaints caused Weinerman to issue the FCR.

Jolivet also claims that in September 2018 she reported Weinerman to HR's Carr for allegedly inappropriate hugging. Doc. 47, Am. Compl., 54–55. Weinerman, she states, was responsible for making bonus eligibility decisions in December 2018. *Id*. at 56. However, Jolivet has not established a genuine issue of material fact that Weinerman, in retaliation for the hugging report, denied her bonus. Rather, she states that the bonus denial was triggered by the PIP and FCR, both of which issued before the hugging report. Doc. 84, Pl.'s Resp., 40–41.

Therefore, the Court **GRANTS** Compass's motion for summary judgment on all claims

related to the bonus denial.[7]

> 4.    The Court Grants Summary Judgment for Compass Regarding Retaliation Claims
> Based on the January 2019 Elimination of Jolivet's DM Position.

Jolivet states that her DM position was eliminated and her employment terminated in early

2019, just one month after she filed a charge of sex discrimination with the EEOC. Doc. 84, Pl.'s

Resp., 43–44. She contends that the termination occurred in retaliation for her protected activity.

*Id.* at 40. Compass states that Jolivet's position was not terminated for any discriminatory or

retaliatory purpose, but "eliminated and subsumed into a new [RD] role" due to an overall

reorganization of the Verizon account. Doc. 73, Def.'s Br., 18–19.

The Court finds that Jolivet has made out a prima facie case for retaliation. Termination is

an adverse employment action. *Besser v. Tex. Gen. Land Off.*, 834 F. App'x 876, 884 (5th Cir. 2020).

Jolivet's filing of the EEOC charge was protected conduct. *See Breeden*, 532 U.S. at 273. Even if the

four-week timing between when Jolivet filed the charge and when she was notified that her position

was eliminated is not "very close," Jolivet's causation element does not rest on temporal connection

alone. *See Besser*, 834 F. App'x at 884 (distinguishing cases where "temporal proximity, standing

alone, is sufficient to allow an inference of causation at summary judgment" from those in which

there is an additional causal link). The account reorganization and position elimination decision here

was made in part by Weinerman, against and to whom Jolivet had complained between August 2018

---

[7] Compass states that it cannot be liable for Title VII claims based on Jolivet's complaints to HR about Weinerman's alleged hugging of female employees because even if the hugging was actionable under Title VII, Compass responded quickly to address the issue and prevent its recurrence. Doc. 73, Def.'s Br., 33. Though Jolivet does not expressly make such a claim, the Court agrees with Compass that Jolivet has not established a genuine issue of material fact with regard to any Title VII sexual harassment claim based on the alleged hugging.

and November 2018. Doc. 74, Def.'s App., Weinerman Depo., 239–40 ("[W]e reorganized the operating team . . . . and combined it all."). Taken together, the four-week gap and the fact that the reorganization/termination decision was arguably within the control of a person who Jolivet has plausibly alleged might want to retaliate against her are sufficient to show the required causal link. *See Besser*, 834 F. App'x at 885 (finding no causal link established where the plaintiff did not allege that a supervisor who had made negative comments regarding his protected activities "had any authority over the decision to fire him, or that she had any influence over those who did have that power").

The burden next shifts to Compass to show a legitimate non-discriminatory reason for the position elimination. *Lyons*, 964 F.3d at 306. Compass has made the required showing, presenting evidence that the Verizon account was reorganized in response to changes in the client's operations and at the client's request. Doc. 73, Def.'s Br., 18–19. As part of this reorganization, multiple positions were combined into only two. *Id*. "For reasons of efficiency and cost savings," the new Verizon RD positions were to be located in California and New Jersey, home to the client's largest sites and corporate headquarters. *Id*. at 19. Jolivet's eliminated position was based in Texas. *Id*. at 54. This is sufficient evidence that the position was eliminated and reorganized for legitimate, non-discriminatory reasons.

Therefore, in order to survive summary judgment, Jolivet must offer sufficient admissible evidence to create a genuine issue of material fact that Compass's proffered reason is pretextual. *Lyons*, 964 F.3d at 306; *McMullin*, 782 F.3d at 258. The Court finds that Jolivet has not created a genuine issue of material fact as to the pretextual nature of the Verizon account reorganization and her position's elimination. Jolivet's Response on this issue points only to evidence that has been

found privileged and inadmissible in this case, and only regarding her most recent termination in October 2020. *See* Doc. 84, Pl.'s Resp., 46–48; Doc. 97, Mem. Op. & Order (denying production). Therefore, the Court **GRANTS** summary judgment for Compass on this claim.

     5.     The Court Denies Summary Judgment for Compass Regarding the Discrimination and Retaliation Claims Based on Compass's January 30, 2019, Decision Not to Hire Jolivet for the RD-East Position.

"Failure to hire is an adverse employment decision." *Thomas v. Tregre*, 913 F.3d 458, 463 (5th Cir. 2019). Jolivet has established the elements of a prima facie case for hiring discrimination in relation to the RD-East position by showing: (1) she is a member of a protected class (sex); (2) she applied for and was qualified for the RD-East position, which was posted; (3) she was rejected for the position; and (4) Compass hired Boylan, who is not a woman. Doc. 84, Pl.'s Resp., 21; *see McMullin*, 782 F.3d at 258. Jolivet has also established the elements of a prima facie case for retaliation by showing that the three members of the interview panel were all subjects of the complaints and EEOC charge she made before the interview. Doc. 84, Pl.'s Resp., 22.

The burden therefore shifts to Compass. Compass has produced evidence that Boylan was hired for the RD-East position because his interview scores were higher. Doc. 73, Def.'s Br., 19. This is sufficient to show a legitimate, nondiscriminatory, and nonretaliatory reason for his selection.

Jolivet must therefore produce sufficient evidence to create a genuine issue of material fact that Compass's proffered reason for Boylan's selection was pretextual. Jolivet has done this by showing that the panel that produced the interview scores was composed of persons against whom she had lodged complaints or who had been involved in investigating these complaints. Doc. 84, Pl.'s Resp., 22. A reasonable jury could find, based on this evidence, that the interview process was not legitimate and nondiscriminatory, but a pretext for retaliation or discrimination.

Therefore, the Court **DENIES** summary judgment for Compass on Jolivet's discrimination and retaliation claims based on the RD-East hiring decision.

> 6. The Court Denies Summary Judgment for Compass Regarding the Discrimination and Retaliation Claims Based on Compass's April 6, 2019, Decision Not to Hire Jolivet for the RD-West Position.

As with the RD-East position, Jolivet has established a prima facie case for hiring discrimination in relation to the RD-West position by showing: (1) she is a member of a protected class (sex); (2) she applied for and was qualified for the RD-West position, which was posted; (3) she was rejected for the position; and (4) Compass continued to seek other candidates for the position after rejecting her, eventually hiring a male. Doc. 84, Pl.'s Resp., 21–22; *see McMullin*, 782 F.3d at 258. Jolivet has also established the elements of a prima facie case for retaliation by showing that the three members of the interview panel were all subjects of the complaints and EEOC charge she made before the interview. Doc. 84, Pl.'s Resp., 22. Again, as with the RD-East position, Compass has shown a legitimate nondiscriminatory reason for the decision, and Jolivet has established a genuine issue of material fact regarding pretext. Additionally, Jolivet has produced evidence that plausibly suggests Compass considered her protected complaints in deciding to seek external candidates rather than offer her the position. *See* Doc. 74, Def.'s App., 296 (noting that the decision to continue seeking additional candidates for the RD-West position would have "obvious risks").

Therefore, the Court **DENIES** summary judgment for Compass on Jolivet's discrimination and retaliation claims based on the RD-West hiring decision.

> 7. The Court Grants Summary Judgment for Compass on the Retaliation Claim Based on Compass' October 27, 2020, Elimination of Jolivet's WPC Position.

Compass states that it is entitled to summary judgment on Jolivet's claim that her WPC RD

position was eliminated in October 2020 in retaliation for the present lawsuit because there is no causal connection between Jolivet's protected claims and the termination. Doc. 73, Def.'s Br., 44. Jolivet states that she has established a prima facie case for retaliation because the position was eliminated on October 27, 2020, the day after discovery originally closed in this action. Doc. 84, Pl.'s Resp., 23.

The Court agrees with Compass. Assuming that the temporal connection between the close of discovery in this case and the termination is sufficient to establish causation and thus Jolivet's prima facie case, Compass has established a legitimate, nondiscriminatory basis for the termination—the catastrophic economic effects of the Covid-19 pandemic on the WPC sector. Doc. 73, Def.'s Br., 20. Compass has produced evidence that, due to the pandemic, WPC's monthly revenue fell by 96% between October 2019 and September 2020. *Id.* Revenue in the WPC-East division, where Jolivet worked, fell by 92%. *Id.* The decrease, Compass states, was due to cancellation of events that WPC would have catered and government-mandated closures of client locations. *Id.* In response, WPC was forced to eliminate jobs, reducing its workforce from 91 exempt full-time employees to 38 employees. *Id.* at 20–21. Six RD and DM positions were reduced to two. *Id.* at 21. All RD and DM positions in the WPC-East division were eliminated, including Jolivet's. *Id.* Based on this evidence, no reasonable jury could find that Jolivet's position was eliminated in response to the present lawsuit. *See Fierros v. Tex. Dep't of Health*, 247 F. App'x 478, 479 (5th Cir. 2007) (per curiam) (affirming district court's grant of summary judgment where the defendant presented evidence that budget shortfall resulted in identical treatment of all similarly-situated employees).

There being no genuine issue of material fact as to this claim, the Court **GRANTS** summary judgment for Compass on this retaliation claim.

8.   The Court Denies Summary Judgment for Compass on the Retaliation Claim Based on Compass's January 28, 2021, Decision to Withdraw Jolivet's Chartwells Employment Offer.

Compass argues that it is entitled to summary judgment on Jolivet's retaliation claim based on the January 2021 decision to withdraw Jolivet's employment offer because this event is not properly before the Court. Doc. 93, Def.'s Reply, 10–12. Specifically, it claims that Jolivet failed to exhaust her administrative remedies before filing her EEOC charge in July 2021. *Id.* Jolivet states that the Chartwells failure to hire decision is not barred by the exhaustion requirement because Compass sought to use the Chartwells job offer to pressure her to drop claims that are properly before the Court in the present suit. Doc. 84, Pl.'s Resp., 49–50. The Court agrees with Jolivet.

Under the *Gupta* exception to the administrative exhaustion requirement, "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge." *Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981). Instead, "the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." *Id.*

Here, as above, a failure to hire—which under these circumstances includes withdrawal of an accepted job offer—is an adverse employment decision. *See Tregre*, 913 F.3d at 463; Doc. 84, Pl.'s Resp., 52 (noting the job offer's acceptance). Jolivet has established a prima facie case for retaliation regarding the Chartwells offer's withdrawal by showing that the offer was withdrawn six days after she informed the recruiter about the pending suit. Doc. 84, Pl.'s Resp., 52. Compass has provided a legitimate, nondiscriminatory reason for the action by producing evidence that the employment agreement containing the release of claims clause was standard and required for all new employees. Doc. 93, Def.'s Reply, 12. However, Jolivet has established a genuine issue of material fact regarding

pretext by showing that her previous employment agreements for positions with other Compass sectors did not include a release of claims, while this one did. *Compare* Docs. 83-9 (2010), *and* 83-19 (2015), *and* 83-20 (2017); *with* Doc. 83-29 (2021). A reasonable jury could find, based on this evidence, that the release of claims provision was added to pressure Jolivet regarding her protected action of bringing claims under Title VII.

Therefore, the Court **DENIES** summary judgment for Compass on Jolivet's discrimination and retaliation claims based on the job offer rescission.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Compass's motion for summary judgment (Doc. 72).

To summarize:

- The Court **DENIES** summary judgment as to the EPA claim based on the IBM and Verizon DM position, with regard to comparator Boylan.

- The Court **GRANTS** summary judgment for Compass on all other EPA claims.

- The Court **GRANTS** summary judgment for Compass on all Title VII claims based on events occurring before February 16, 2018.

- The Court **GRANTS** summary judgment for Compass on all Title VII claims based on the June 2018 PIP.

- The Court **GRANTS** summary judgment for Compass on all Title VII claims based on the August 2018 FCR.

- The Court **GRANTS** summary judgment for Compass on all Title VII claims based on the December 2018 bonus denial.

- The Court **GRANTS** summary judgment for Compass on all Title VII claims based on the January 2019 position elimination.

- The Court **DENIES** summary judgment for Compass on all Title VII claims based on the failure to hire for the RD-East Position.

- The Court **DENIES** summary judgment for Compass on all Title VII claims based on the failure to hire for the RD-West Position.

- The Court **GRANTS** summary judgment for Compass on all Title VII claims based on the October 2020 WPC termination.

- The Court **DENIES** summary judgment for Compass on all Title VII claims based on the January 2021 failure to hire for the Chartwells position.

SO ORDERED.

SIGNED: September 28, 2021.


_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE